**SAINT PAUL–MERCURY INDEMNITY COMPANY, a Corporation, Plaintiff,**

v.

**Walter HEFLIN, Defendant.**

Civ. A. No. 1238.

United States District Court
W. D. Arkansas, Fort Smith Division.

Jan. 19, 1956.

Shaw, Jones & Shaw, Fort Smith, Ark., for plaintiff.

Rex W. Perkins, Fayetteville, Ark., for defendant.

JOHN E. MILLER, District Judge.

On January 16, 1956, this case was tried to the Court, without a jury, and at the conclusion of the trial the Court took the case under advisement pending receipt of citations of authorities from the attorneys for the respective parties. The citations of authorities have been received, and the Court, having considered the pleadings, ore tenus testimony of the witnesses, stipulations, exhibits, and citations of authorities, now makes and files herein its Findings of Fact and Conclusions of Law, separately stated.

### Findings of Fact.

1. Plaintiff is a Delaware corporation and is licensed to do and is doing business in the State of Arkansas.

The defendant is a citizen of the State of Arkansas and resides in Fayetteville, Arkansas.

The amount in controversy, exclusive of interest and costs, exceeds the sum of $3,000.

2. On November 2, 1954, plaintiff issued a policy of automobile liability insurance to the defendant, Walter (W. W.) Heflin, covering a 1941 Chevrolet club coupe. This policy was in full force and effect at all times material herein.

Limits of liability stated in the policy are: (1A) bodily injury liability, $10,000 each person, (A) $20,000 each accident; (B) property damage liability, $5,000 each accident.

Among other things the policy contains the following provisions:

"Section II. Defense, Settlement, Supplementary Payments.

"As respects the insurance afforded by the other terms of this Policy under Coverages A and B the Company shall:

"(a) defend any suit against the Insured alleging such injury, sickness, disease or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; * * *"

*     *     *     *     *

"Section IV. Automobile Defined, Trailers, Two or More Automobiles (Including Automatic Insurance).

"(a) Automobile. Except where stated to the contrary, the word 'automobile' means:

"(1) Described Automobile—the motor vehicle or trailer described in this Policy;

*     *     *     *     *

"(3) Temporary Substitute Automobile—under Coverages A, B and C, an automobile not owned by the Named Insured while temporarily used as the substitute for the described automobile while withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction; * * *

*     *     *     *     *

"Section V. Use of Other Automobiles. If the Named Insured is an individual who owns the automobile classified as 'pleasure and business' or husband and wife either or both of whom own said automobile, such insurance as is afforded by this Policy for bodily injury liability, for property damage liability and for medical payments with respect to said automobile applies with respect to any other automobile, subject to the following provisions:

*     *     *     *     *

"(b) This insuring agreement does not apply:

"(1) to any automobile owned by, hired as part of a frequent use of hired automobiles by, or furnished for regular use to the Named Insured or a member of his household other than a private chauffeur or domestic servant of the Named Insured or spouse;

"(2) to any automobile while used in the business or occupation of the Named Insured or spouse except a private passenger automobile operated or occupied by such Named Insured, spouse, chauffeur or servant; * * *"

3. The defendant and his son, Walter L. Heflin, had been engaged in business as a partnership for a number of years. They owned a cafe and a service station which were located adjacent to each other in the City of Fayetteville.

The defendant was primarily responsible for the operation of the cafe and his son was primarily responsible for the service station and the bookkeeping of the partnership. However, at times the son would work in the cafe, and at times the defendant would work in the service station, depending upon the amount of business at the station or cafe at any particular time.

Defendant also owned a farm near Fayetteville in which his son did not own an interest. The defendant kept some cattle on the farm and his son also had a few head of cattle there which had been given to him by the defendant. The defendant would visit the farm every day or every other day to feed the cattle and to do other necessary chores. Ordinarily he drove his 1941 Chevrolet on

these trips to the farm. Sometimes his son would help him on the farm.

The defendant owned the 1941 Chevrolet individually. He and his son as partners at one time owned two wreckers, and two 1948 Jeeps. The Jeeps and wreckers were used in connection with the operation of the service station. The first Jeep was gray in color and was purchased about 1949. The second Jeep was red and was purchased a few years later.

The defendant occasionally used the red Jeep when he visited his farm and also used it at times to round up the cattle. He seldom, if ever, used the gray Jeep to visit the farm during the week, but at times he did drive the gray Jeep out to the farm on Sunday.

4. On June 13, 1955, defendant was informed that some of his cattle were out and were on a neighbor's property. On this day his 1941 Chevrolet was in the garage for repairs, and prior to this time the red Jeep had been sold. Therefore, the only passenger vehicle left was the gray Jeep, and defendant used it to go to his farm and see about the cattle. While defendant was on this trip using the gray Jeep, he was allegedly involved in an accident with a mule-drawn mowing machine owned by J. W. Gooding. As a result of this alleged accident J. W. Gooding filed suit in the Washington County Circuit Court against defendant, Walter Heflin (W. W. Heflin), seeking to recover for personal injuries and property damage.

The defendant herein informed the plaintiff insurance company of the action and demanded that it defend the same for the defendant.

Thereafter plaintiff brought the instant suit seeking a declaratory judgment declaring that it is not liable to defendant under the terms of the policy of insurance in question, and is under no duty to defend the action pending in the Washington County Circuit Court.

5. The certificate of title for the gray Jeep is in the name of Walter Heflin and was signed by defendant's son, who handled the transaction. However, as heretofore stated, the gray Jeep, as well as the two wreckers and the red Jeep, was owned by the partnership.

### Discussion.

In Finding of Fact No. 2 the Court set out the pertinent portions of Sections IV and V of the Insuring Agreements of the policy. These sections are entirely separate and distinct, and if the defendant is covered by either of the sections, plaintiff is not entitled to the relief it seeks in the instant case.

Section I, coverages A and B of the Insuring Agreements, provides that the plaintiff shall pay on behalf of the insured (defendant) all sums which the insured shall become legally obligated to pay as damages because of bodily injury or injury to property caused by accident and arising out of the ownership, maintenance, or use of the "automobile". Section IV(a) (3) defines the word "automobile" as including, under coverages A, B and C, "an automobile not owned by the Named Insured while temporarily used as the substitute for the described automobile while withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction".

In the instant case it is admitted that the described automobile, the 1941 Chevrolet, was withdrawn from its normal use because of its breakdown and repair. Thus, the two questions presented are whether (1) the gray Jeep was being "temporarily used", and (2) whether the Jeep was "not owned" by the named insured, defendant herein.

With regard to the first question the evidence established without doubt that the gray Jeep was being temporarily used as a substitute for the insured vehicle, the 1941 Chevrolet. That is, the defendant ordinarily used his 1941 Chevrolet in making trips to the farm, and on this occasion he was using the gray Jeep for the same purpose because the Chevrolet was in the garage.

On the question of temporary use, see Fleckenstein v. Citizens' Mutual Automobile Ins. Co., 326 Mich. 591, 40 N.W. 2d 733.

Therefore, the real issue is whether the gray Jeep was or was not owned by the defendant within the meaning of Section IV(a) (3) of the policy. If he owned the Jeep within the meaning of the policy, the temporary substitute provision would not apply, and the Jeep would not be insured. If he did not own the Jeep, the substitute provision would apply and the Jeep would be insured.

As stated in Finding of Fact No. 5, although the certificate of title for the gray Jeep was signed by defendant's son, the Jeep was actually purchased and owned by the partnership. In this connection it might be noted that Section 65–108, Ark.Stats.1947, Anno. (Uniform Partnership Act) provides that all property acquired by a partnership is partnership property and that unless the contrary intention appears, property acquired with partnership funds is partnership property. Thus, it is clear that the gray Jeep was specific partnership property.

Section 65–125, Ark.Stats., provides:

"(1) A partner is co-owner with his partners of specific partnership property holding as a tenant in partnership.

"(2) The incidents of this tenancy are such that:

"(a) A partner, subject to the provisions of this act (Secs. 65–101—65–143) and to any agreement between the partners, has an equal right with his partners to possess specific partnership property for partnership purposes; but he has no right to possess such property for any other purpose without the consent of his partners.

"(b) A partner's right in specific partnership property is not assignable except in connection with the assignment of rights of all the partners in the same property."

Section 65–126, Ark.Stats., provides:

"Nature of partner's interest in partnership.—A partner's interest in the partnership is his share of the profits and surplus, and the same is personal property. (Acts 1941, No. 263, Sec. 26, p. 642.)"

■ In view of the above quoted provisions of the Uniform Partnership Act, the Court is convinced that defendant did not own the gray Jeep within the meaning of the substitute automobile provision. It is true that he had an equal right with his son to possess and to use the gray Jeep for partnership purposes, but he had no right to use the Jeep for any other purpose without the consent of his son. Moreover, the defendant could not assign his right in the Jeep except in connection with the assignment of the right of his son in said Jeep. In other words, the Jeep was a partnership vehicle primarily for use in the business and defendant could use it for no other purpose without the consent of his son. And the fact that consent might be freely given is not material.

Therefore, as stated above, the Court is convinced that defendant did not own the Jeep and that the Jeep was therefore covered by the temporary substitute automobile provision of the policy. Compare, Farley v. American Automobile Ins. Co., 137 W.Va. 455, 72 S.E.2d 520, 34 A.L.R.2d 933, holding (quoting a syllabus of the court) that:

"A policy of insurance insuring two persons as the named insured against liability for damages as the result of an accident occurring in the operation of a motor vehicle described in such policy, and permitting the substitution of a vehicle not owned by such named insured, while such described vehicle is being repaired, covers an accident occurring during the operation of the substituted vehicle, though the same

is owned solely by one of the named insured."

See also, Kilduff v. Boston Elevated Railway Co., 247 Mass. 453, 142 N.E. 98 (holding that where legal title to automobile truck was in partnership and not in an individual member thereof, the latter was not "the owner" within a statute providing that application for registration of motor vehicles may be made by the "owner" thereof); Schevling v. Johnson, D.C.Conn., 122 F.Supp. 87, affirmed 2 Cir., 213 F.2d 959; Annotation, 34 A.L.R.2d 936, 947–951.

Since the Court has concluded that the gray Jeep was covered under Section IV of the Insuring Agreements, it is unnecessary for the Court to determine whether it was also covered by Section V.

Of course, under the provisions of Section II of the Insuring Agreements set out in Finding of Fact No. 2, the plaintiff has a duty to defend the suit pending against the defendant in the Washington County Circuit Court.

### Conclusions of Law.

1. The Court has jurisdiction of the parties to and the subject matter of this action.

2. The gray Jeep which defendant was driving at the time of the alleged accident was a temporary substitute automobile within the meaning of the policy, and thus was covered by the policy.

3. The plaintiff has a duty to defend the action pending against the defendant in the Washington County Circuit Court and to pay on behalf of the defendant such sum as he may become legally obligated to pay as damages because of bodily injury or injury to property, subject to the limits of liability stated in the policy.

A judgment in accordance with the above should be entered.