CALDWELL, EXECUTRIX, ETC. *v.* HARTFORD ACCIDENT & INDEMNITY COMPANY

No. 42891       February 10, 1964       160 So. 2d 209

*Ben M. Caldwell,* Marks; *Holcomb & Curtis,* Clarksdale, for appellant.

*Brewer, Brewer & Luckett,* Clarksdale, for appellee.

Rodgers, J.

Appellant filed suit in the First Circuit Court District of Tallahatchie County, Mississippi, against appellee. She alleged in her declaration that she is the executrix of the last will of her late husband, J. H. Caldwell; that during his lifetime he entered into an automobile liability insurance contract with the defendant insurance company under date of November 15, 1961, for a period of one year. The policy provided, among other things, that the insurance company would pay all sums for which the insured became legally liable, for injury to persons or property by reason of the ownership, maintenance and use of the automobile or use of a non-owned automobile covered by the terms of the contract. The plaintiff alleged that the policy provided that the insurance company would defend any suit against the insured, seeking damages payable under the policy even if such allegations are groundless.

The declaration alleges that the insurance policy states, among other things, that:

"1. Coverage A — Bodily Injury Liability; Coverage C — Property Damage Liability;

"To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of:

"Coverage A bodily injury, sickness or disease, including death resulting therefrom, hereinafter called 'bodily injury' sustained by any person;

"Coverage C injury to or destruction of property, including loss of use thereof, hereinafter called 'property damage'; arising out of the ownership, maintenance or use of the owned automobile or any non-owned automobile, and the company shall defend any suit alleging such bodily injury or property damage and seeking damages which are payable under the terms of this policy, even if the allegations of the suit are groundless, false or fraudulent; but the company may make such investigation and settlement of any claim or suit as it deems expedient."

"4. Definitions: Under Section 1: 'named insured' means the individual named in Item I of the declarations and also includes his spouse, if a resident of the same household; 'insured' means a person or organization described under 'Persons Insured' * * * 'owned automobile' means private passenger, farm or utility automobile or trailer owned by the named insured, and includes a temporary substitute automobile; 'temporary substitute automobile' means any automobile or trailer, not owned by the named insured, while temporarily used as a substitute for the owned automobile or trailer when withdrawn from the normal use because of its breakdown, repair, servicing, loss or destruction; 'non-owned automobile' means an automobile or trailer not owned by or furnished for the regular use of either the named insured or any relative, other than a temporary substitute automobile * * *'".

The amendment to the policy states: "It is agreed: 1. That the definition of 'owned automobile' is amended to read: 'Owned Automobile' means (a) a private passenger, farm or utility automobile described in the policy * * * and includes a temporary substitute automobile."

The declaration alleges that on or about the 18th of June 1961, within the terms of the policy, J. H. Caldwell attempted to use his Oldsmobile, insured under the policy, but found that one of the tires was about flat. He then borrowed his wife's Chevrolet automobile to make the trip because his automobile was "temporarily withdrawn from use."

The insured made the trip in the substitute automobile belonging to his wife, and on his way back home he had an accident. Tom Bruce Winters was injured. The insured notified the insurer of the accident, and defendant sent an adjuster to investigate it and the adjuster advised the insured that the company was secondarily liable and that the insurance company would pay the excess over and above any liability, his wife's insurance carrier did not pay within the limits of their policy. On the basis of this statement by the adjuster, the defendant effected a tentative settlement on the other policy in which his wife was a joint-defendant.

The defendant insurance company thereafter declined to participate in the settlement of the litigation and the first suit against J. H. Caldwell, et al. was dismissed. Tom Bruce Winters filed his second suit against J. H. Caldwell in the sum of $150,000. The insured properly requested the defendant insurance company to furnish him with legal counsel, but defendant refused to defend the lawsuit and denied liability. The insured employed counsel and defended the suit, nevertheless a judgment was obtained against the insured, in favor of Tom Bruce Winters in the sum of $10,750, and the declaration alleges that the insured was forced to pay $750 over and above the amount paid by the carrier of the insurance on Mrs. J. H. Caldwell's car. The appellant alleges he was required to pay $2,500 attorney's fee to defend the suit brought against him, and that it was also necessary for him to expend the sum of $750 incident to the defense of these suits and incident to the prosecution of the

present action. Judgment was sought in the total sum of $4,000.

The appellee filed a copy of the insurance policy as a part of, and attached to, the declaration which includes an amendment to the original policy, both dated November 13, 1960.

The appellee states in its brief that there was an amendment dated February 15, 1961, but there is nothing in the declaration to indicate that there was a second amendment to the policy.

It is alleged by the appellee, and admitted by the appellant, that the question to be determined by this appeal is whether or not the use of the automobile belonging to the insured's wife was a ''temporary substitute automobile'' within the meaning of the policy.

The insurance company argues that since the automobile described in the policy was not the automobile used by Caldwell at the time of the accident, the policy did not cover the loss unless it was an automobile used as a ''temporary substitute'' for the automobile described in the policy. The appellee points out that the policy defines the temporary substitute automobile as: '' 'temporary substitute automobile' means any automobile or trailer, not owned by the named insured, while temporarily used as a substitute for the owned automobile or trailer when withdrawn from the normal use because of its breakdown, repair, servicing, loss or destruction.''

It is argued that the named insured means the individual named in Item I of the Declaration, and also includes his spouse if a resident of the same household. The appellee assumes that no automobile belonging to the wife of the person named in the policy can be a ''temporary substitute automobile.'' It is then reasoned that since the automobile belonged to the insured's spouse, the meaning is the same as if the automobile involved in the injury belonged to the person named

in the policy and therefore is not covered by its terms. It is pointed out that an insurance contract, like any other contract, if perfectly clear and unambiguous, should be construed as written, citing Griffin v. Maryland Casualty Co., 213 Miss. 624, 57 So. 2d 486; Continental Casualty Company v. Hall, 118 Miss. 871, 80 So. 335.

On the other hand, the appellant claims that the "named insured" means the person whose name is set out in the policy as the insured. It is claimed the policy is broadened to insure the named insured's spouse as an insured, while driving the automobile described in the policy. The term "temporary substitute automobile" means any automobile not owned by the named insured, and is used as a temporary substitute for the automobile described in the policy, provided it does not belong to the person named in the policy.

It is said the term "named insured" means the individual in Item I of the Declaration and also includes his spouse as an insured. Thus she is an insured while operating the described automobile. But this does not mean that the insured owns his wife's automobile. The policy intends to insure the named individual against liability while operating the owned automobile or any other automobile used as a temporary substitute by the named insured or his wife, so long as the person named does not own the automobile being temporarily used, or so long as his wife does not own the automobile she is temporarily using as a substitute for the one described in the policy.

Thus the conclusion is reached that the automobile used by the husband belonging to the wife does not exclude the husband from protection afforded by the insurance contract, although the policy would not protect the wife against liability while she operated her owned automobile as a temporary substitute for her husband's automobile.

The question and issue here presented has never been previously submitted to this Court. The courts of other states have passed upon the question, and both sides admit that there are three cases that should be considered by this Court. They are: Farley v. American Automobile Insurance Company, a West Virginia case, 72 S. E. 2d 520; St. Paul-Mercury Indemnity Company v. Heflin, 137 F. Supp. 520, from the U. S. District Court for the Western District of Arkansas; and Baxley v. State Farm Mutual Auto Liability Insurance Company, a South Carolina case, reported in 128 S. E. 2d 165.

The Farley case involves a policy issued to Earl Farley and Harry Wallace to cover specifically a particularly described truck, and includes coverage of a vehicle temporarily substituted for the described vehicle in the following words: "An automobile, not owned by the named Insured, while temporarily used as a substitute for the described automobile while withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction." Earl Farley had an accident while driving a truck, other than the one particularly described in the policy, while it was being repaired. It belonged to Harry Wallace individually. The question was whether or not it belonged to the named insured, to-wit: Earl Farley and Harry Wallace. The Court held that since Earl Farley and Harry Wallace were the named insured, a truck owned by Harry Wallace individually was not owned by the "named insured."

In the Heflin case, supra, the policy was issued to Walter Heflin, the insured, to cover a Chevrolet coupe, and that included coverage for temporary substitute automobile which was defined as "an automobile not owned by the Named Insured while temporarily used as a substitute for the described automobile while withdrawn from the normal use because of its breakdown, repair, servicing, loss or destruction."

Walter Heflin had an accident while driving a jeep belonging to a partnership composed of himself and his son, while his Chevrolet Club coupe, belonging to him individually, was in the garage for repairs. The question as to whether or not the jeep belonged to the "named insured" or Walter Heflin, individually, was presented to the court and the court held that since the "named insured" was Walter Heflin individually, a truck belonging to a partnership composed of Walter Heflin and his son was not owned by the "named insured."

In the Baxley case the facts are almost identical to the facts in the instant case. J. B. Baxley was killed while driving an automobile belonging to his wife. His policy coverage if he met his death while driving a "temporary substitute" automobile not owned by the named insured. The "named insured" was defined as the individual designated in the declaration "and also included his spouse." The Court in that case said: "The definition of 'named insured' in the policy, and under the circumstances here involved, simply had the effect of making 'the named insured' two people instead of one. Since it is conceded that the Chrysler automobile was not owned by Mr. Baxley, nor by Mr. and Mrs. Baxley jointly, but only by Mrs. Baxley, it was 'not owned by the named insured' and was covered as a temporary substitute automobile under the provisions of the policy."

It seems to us that the Baxley case is directly in point and is persuasive in the determination of the instant case.

██ █ The rule that the insurance policy prepared by the insurer must be construed more strongly against the insurance company, and that any fair doubt should be resolved in favor of the insured, is so well-settled in the law of insurance that we hesitate to cite any cases. See Penn v. The Commercial Union Fire Insurance Company of New York, 233 Miss. 178, 101 So. 2d 535.

■■ It is equally well-settled that when the provisions of an insurance policy are subject to two interpretations equally reasonable, that interpretation which gives greater indemnity to the insured will prevail. Penn v. Commercial Union Fire Insurance Company of New York, supra.

■■ We are therefore of the opinion that the declaration in this case stated a cause of action, the demurrer should have been overruled, and that the judgment of the court should be reversed and remanded.

Reversed and remanded.

*Lee, C. J., and Ethridge, McElroy and Brady, JJ.,* concur.