233 So.2d 805 (1970)
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY
v.
Hugh M. TAYLOR, Sr. & Hugh M. Taylor, Jr.
No. 45730.
Supreme Court of Mississippi.
April 6, 1970.
Wilroy, Wilroy & Hagen, Hernando, Lipscomb, Barksdale, Steen & Caraway, Jackson, for appellant.
H. Kirk Moore, Jr., Dick R. Thomas, Nat G. Troutt, Senatobia, for appellees.
*806 ETHRIDGE, Chief Justice.
In this case, involving an employee exclusion clause, the question is whether an automobile liability insurance policy, by its own terms, makes separable employment by a partnership from employment by one of the partners. The injured employee was hired by the partnership, not by the individual owner of the insured vehicle in which he was injured. We hold that the policy itself separates employment by the partnership, and that the employee does not fall within the ambit of the exclusion clause in the individual partner's liability policy.
Hugh M. Taylor, Sr. and Hugh M. Taylor, Jr., complainants-appellees, brought this action in the Chancery Court of Tate County against State Farm Mutual Automobile Insurance Company, defendant-appellant, seeking damages for State Farm's refusal to defend a personal injury action brought against Taylor, Sr. and Jr., in the circuit court for personal injuries received by an employee of the Taylor farming partnership. The chancery court rendered a decree against State Farm for $6500, which we affirm.

I.
Taylor, Sr. and Jr., father and son, operated their respective farm lands as a unit and a partnership. State Farm issued an automobile liability policy to Taylor, Jr., covering a 1960 pickup truck which was owned by him. On September 27, 1966, the accident in question occurred. For two weeks W.L. Young had been living with his wife on the Taylor partnership property and had been working for the partnership. Taylor, Sr., who had borrowed two pieces of plywood from Hale *807 Lumber Company, requested Taylor, Jr., to return the plywood to that company on his trip in the truck to a farm where Young had been operating a cotton picker for the partnership. The purpose of the trip was to service the cotton picker and return it to the Taylor farm. The plywood was laid on the back of the truck, and Young sat on it in order to hold it down. While Taylor, Jr., was driving the insured vehicle about a mile north of the partnership farm, Young fell or was blown from the truck and suffered severe personal injuries.
On the day after the accident, Taylor, Jr., who had an eighth-grade education, gave a written statement to a claim agent for State Farm, in which he described the accident, stating that "W.L. Young works for me," and he would have paid him $6.00 for that day's work. He said that on the day of the accident "we was (sic) not picking any cotton. W.L. had not been with us but for about two weeks but we were planning to keep him all the time * * *"
In the latter part of 1966, State Farm sent its file on this matter to W.E. Wilroy, Jr., regularly employed counsel for State Farm. Wilroy went to the scene of the accident with an adjuster and studied the file sent him. He noticed the employee exclusion clause in the policy, and discussed it with State Farm. In February 1967, Wilroy wrote Taylor, Jr., that he had been retained by State Farm "to protect their interest and yours in the claim against you by W.L. Young * * *" Wilroy requested Taylor, Jr.'s cooperation and stated that he would be in touch with him within the next week to take his statement. In question-and-answer form, Taylor, Jr., asserted that he and his father were in partnership together in the farm business, and that Young had been "living with us about two weeks, as a day hand." He frequently used the first person, plural pronoun "we," who furnished Young a house, paid him, and directed his work. However, asked whether he considered that on the day in question Young was "employed by you," Taylor, Jr., answered, "Yes, sir." Taylor, Jr., had no attorney representing his own interest when he was giving this transcribed statement. Nevertheless he frequently stated that he and his father were in a partnership business. The chancery court was justified in concluding, as it did, that Young worked for the Taylor partnership. No representative of State Farm interviewed Taylor, Sr.
Taylor, Sr. also had in force a liability insurance policy with Central Mutual Insurance Company. Although Central advised Taylor, Sr., that it did not think it had any coverage for the accident, it furnished him with a defense in Young's lawsuit.
On March 5, 1967, W.L. Young filed in the Circuit Court of Tate County a declaration against Taylor, Jr. and Sr., seeking $100,000 damages for his personal injuries received in the September 1966 accident. The declaration charged that plaintiff was employed "by the defendants herein," and that they were "the owners and co-operators of a farm in Tate County * * * the defendants are owners and operators of farm trucks, a mechanical cotton picker * * *" etc. Plaintiff was employed by Taylor, Sr. and Jr., to operate farm machinery and tools "belonging to said defendants on their farm." The declaration averred that on the day in question plaintiff was making the trip for the purpose of "returning to the defendants' farm a mechanical cotton picker," which plaintiff had been using for "the benefit of defendants"; that the accident happened as a result of negligently excessive speed, placing plaintiff in a perilous situation, and not furnishing him a safe place and conveyance in which to work.
The next regular term of the circuit court began on April 24, 1967. By letter dated April 21, 1967, and received by Taylor, Jr., on April 24, the day court began, he was advised by State Farm that its investigation revealed that Young was employed *808 by Taylor, Jr., and was in the course of his employment, and that, because of the employee exclusion clause, its policy did not protect him from Young's claim and it would not furnish a defense of the lawsuit. On the same day, Taylor, Jr., very much perturbed, contacted Dick R. Thomas, an attorney, and employed Thomas to represent him in the suit for a fee of $2500. Thomas secured a continuance until the next regular term of court in October 1967, when there was a trial with a jury verdict and judgment of $5,000 against Taylor, Sr. and Jr., complainants herein, in favor of plaintiff Young. There was no appeal from that judgment and it became final.
In February 1968, Taylor, Sr. and Jr., filed the present suit in the Chancery Court of Tate County against State Farm. The bill of complaint outlined the above facts and sought recovery of the $5,000 judgment rendered in favor of Young against complainants, together with $2,500 for attorneys' fees incurred by Taylor, Jr., in defending the circuit court action. The bill charged that State Farm wrongfully refused to defend the action. (Central was dismissed as a defendant, because it had settled for $1,000 the claim of Taylor, Sr.) The chancery court rendered a decree in favor of complainants-appellees in the amount of $6,500, consisting of $4,000 for the circuit court judgment and $2,500 for attorneys' fees incurred by Taylor, Jr.

II.
The State Farm policy contains a typical employee exclusion clause:
This insurance does not apply under:
* * * * * *
(h) coverage A, (1) to bodily injury to any employee of the insured arising out of and in the course of (i) domestic employment by the insured, if benefits therefor are in whole or in part either payable or required to be provided under any workmen's compensation law, or (ii) other employment by the insured; * * *
The chancery court found that Young was an employee of the partnership; and that the policy was ambiguous as to whether an employee of a partnership was also the personal employee of a member of the partnership for the purpose of the exclusion clause. Referring to rules of interpretation, the court held that construing alternative interpretations of the policy favorably to the insured, the exclusion clause did not deprive Taylor, Jr., of coverage under the State Farm policy; and that State Farm had the duty to defend Young's suit against Taylor, Jr., and had erroneously refused to do so.
The right of the insurer to exclusive control over litigation against its insured is accompanied by a correlative requirement that the insurer defend the insured against all actions brought against him on the allegation of facts and circumstances covered by the policy, even though such suits may be groundless, false or fraudulent. 14 Couch on Insurance 2d § 51:32 (1965). The traditional test is that the obligation of a liability insurer is to be determined by the allegations of the complaint or declaration. Ibid., § 51:40; United States Fidelity & Guaranty Co. v. Yazoo Cooperage Co., 157 Miss. 27, 127 So. 579 (1930); Commercial Casualty Ins. Co. v. Tri-State Transit Co., 190 Miss. 560, 1 So.2d 221, 133 A.L.R. 1510 (1941). Moreover, a divergence may exist between the facts as alleged in the petition and the actual facts as they are known to or reasonably ascertainable by the insurer, in which latter case the insurer has a duty to defend, notwithstanding a policy exclusion as to employees. Mavar Shrimp & Oyster Co. v. United States Fidelity & Guaranty Co., 187 So.2d 871 (Miss. 1966); 14 Couch on Insurance 2d § 51:47 (1965); see also 44 Am.Jur.2d Insurance §§ 1535-1543 (1969).
*809 The State Farm policy contained a defense clause, in "Insuring Agreement I  The Owned Automobile":
In consideration of the premium paid and in reliance upon the declarations made a part hereof, agrees with the named insured, subject to the provisions of the policy:
* * * * * *
(1) To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of (A) bodily injury sustained by other persons, * * * and to defend, with attorneys selected by and compensated by the company, any suit against the insured alleging such bodily injury or property damage and seeking damages which are payable hereunder even if any of the allegations of the suit are groundless, false or fraudulent; but the company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient.
Mississippi has adopted the aggregate rather than the entity theory of partnership. See Barrett & Saego, Partners and Partnerships § 1.2 (1956). This was at least wholly true until adoption in 1964 of the Uniform Limited Partnership Act, which some authorities think encompasses parts of each theory. Miss.Code 1942 Ann. §§ 5553-01 to 5553-32 (Supp. 1968); Barrett & Saego, Partners and Partnerships § 1.2 (1956).
However, in this instance we are dealing with a contract of liability insurance, which must be construed in accord with all of the terms of the contract, including the employee exclusion clause. State Farm's policy contains no definition of the word "employee." The "named insured" is Hugh M. Taylor, Jr. This named insured is a person, not a partnership or corporation. The insuring agreement and defense clauses contain an agreement by the insurer to defend insured against "bodily injury sustained by other persons * * *" The limit of liability is applicable to "each person."
Further, the policy contains a "definitions" section, applicable to Insuring Agreements I and II, with the following provisions:
DEFINITIONS  * * *
INSURED  under coverages A, B, C and M the unqualified word "insured" includes
(1) the named insured, and
(2) if the named insured is a person or persons, also includes his or their spouse(s), if a resident of the same household, and
(3) if residents of the same household, the relatives of the first person named in the declarations, or of his spouse, and
(4) any other person while using the owned automobile, provided the operation and the actual use of such automobile are with the permission of the named insured or such spouse and are within the scope of such permission, and
(5) under coverages A and B any person or organization legally responsible for the use of such owned automobile by an insured as defined under the four subsections above.
The "Definitions" section also contains this significant statement:
PERSON  means a natural person and not a corporation, partnership, association or business name. (Emphasis added).
The "named insured," Taylor, Jr., is a "person" within the above-stated definition, and the policy specifically states, "person means a natural person and not a * * * partnership * * *"
In fine, the State Farm policy expressly makes a partnership employee a separable employment from that of an employee of the named insured who is a *810 natural person. The effect of the definition of a "person," expressly excluding a "partnership," evidences an intent to consider as separable the employee of a partnership from an employee of the named insured who is a partner. For purposes of the exclusionary clause and the insuring agreement, the partnership and the insured, a natural person, Taylor, Jr., are distinct and separate. Hence Young, an employee of the partnership, is not within the ambit of the exclusionary clause, which excludes the insured's liability to his employee.
Moreover, if it is assumed at best that the State Farm policy is ambiguous, it was prepared by the insurer, and under established rules of interpretation must be construed most strongly against the insurance company, resolving any fair doubt in favor of insured. The employee exclusion clause should be strictly construed in favor of the insured. See 7 Am.Jur.2d Automobile Insurance §§ 132-133 (1963). A supplemental rule of construction is that when the provisions of an insurance policy are subject to two interpretations equally reasonable, that interpretation which gives greater indemnity to the insured will prevail. Caldwell v. Hartford Accident & Indemnity Co., 248 Miss. 767, 160 So.2d 209 (1964). Application of these rules of construction to State Farm's insurance policy further supports the interpretation which we have adopted.

III.
Oklahoma Farm Bureau Mutual Insurance Company v. Mouse, 268 P.2d 886 (Okl. 1953), involves facts almost identical to those in the instant case. The Court concluded that Oklahoma law and the liability policy separated employees of the partnership from employees of one individual partner, and that the injured employee was hired by the partnership rather than the individual insured partner, who was protected under the policy, since the exclusion clause did not apply to the partnership's employee. Oklahoma substantive law involves both the aggregate and the entity theories.
In Caldwell v. Hartford Accident & Indemnity Company, 248 Miss. 767, 160 So.2d 209 (1964), a wife's automobile was held to be a "temporary substitute automobile" within the provisions of the husband's policy, although the named insured was the husband but also included his spouse when a resident of the same household. For purposes of the temporary substitute clause, and in accord with its terms, the car was not owned by the husband nor by him and his wife jointly, but only by the wife, and, according to the terms of the policy, it was "not owned by the named insured" and was therefore covered as a temporary substitute automobile.
In St. Paul-Mercury Indemnity Company v. Heflin, 137 F. Supp. 520 (U.S.D.C., W.D. Ark. 1956), a jeep which belonged to a partnership was not owned by one of the partners. Where a partner used it as a substitute automobile, the jeep was insured under the partner's liability policy which extended coverage to substitute automobiles not owned by named insured. Arkansas has the Uniform Partnership Act, but Heflin is relevant because the Court construed the policy itself as rendering separable partnership property from that of the individual partner.
In Farley v. American Automobile Insurance Company, 137 W. Va. 455, 72 S.E.2d 520, 34 A.L.R.2d 933 (1952), a liability policy was issued to two partners. One of them had an accident while driving a truck other than the one described in the policy, which was being repaired. The truck being driven belonged to the partner individually. The Court, referring to "the restrictive meaning of the phrase `named insured,'" held that the temporary substitute automobile was covered. See also State Farm Mutual Automobile Insurance Co. v. Shelton, 368 S.W.2d 734 (Ky. 1963).
Caldwell v. Hartford Accident & Indemnity Company, supra, cited and discussed with approval both the Farley and Heflin cases. See Annot., 50 A.L.R.2d 78 (1956).
*811 Fidelity-Phoenix Fire Insurance Company v. Howard, 182 Miss. 546, 181 So. 846 (1938), is not controlling here. There a partnership with identical partners under one partnership name was held to be the same partnership when conducting some other portion of its business under another name. The partnership was the insured. In the instant case the farm partnership was not the insured.
United States Fidelity & Guaranty Company v. Collins, 231 Miss. 319, 95 So.2d 456, 96 So.2d 456 (1957), involved a workmen's compensation insurance policy written for Box, one of the partners and a subcontractor with his partner Shewmake. An employee's exclusion clause was not in issue. The injured party was an employee of the partnership. The Court held that two sections of the Workmen's Compensation Act wrote into the policy coverage for employees working for the partnership. On the other hand, we are construing here an automobile liability insurance policy, with an employee exclusion clause which makes separable by the terms of the policy itself employment by the partnership and by an individual partner.
In summary, Young was an employee of the partnership consisting of Taylor, Sr. and Jr. The terms of the policy itself separate employment by the partnership from that of one of the partners. The policy does not define the word "employee." The word "insured" does not include the partnership, and thus Young does not fall within the employee exclusionary clause. Further, if it is assumed that the policy is ambiguous, it should be construed most strongly against the insurance company, resolving any fair doubt in favor of insured. Where two interpretations of the policy are equally reasonable, that interpretation which gives greater indemnity to the insured will prevail. Applying these established rules of construction, the interpretation adopted is reasonable and consistent with the terms of the policy.
For these reasons, State Farm had the duty under its insurance contract to defend Young's claim against Taylor, Jr., and declining to do so, it was properly held by the trial court to be liable for the resulting damages.
Affirmed.
PATTERSON, INZER, SMITH and ROBERTSON, JJ., concur.