**Bess C. BOYD, Plaintiff,**

v.

**Charles M. BOWMAN and Amelia Bowman, Defendants,**

v.

**UNITED STATES FIDELITY & GUARANTY COMPANY, Garnishee.**

**No. 69–1287–Civ.**

United States District Court, S. D. Florida.

June 1, 1970.

Green & Hastings, Miami, Fla., for plaintiff.

Blackwell, Walker & Gray, Miami, Fla., for defendants.

Carey, Dwyer, Austin, Cole & Selwood, Miami, Fla., for garnishee.

ORDER GRANTING SUMMARY JUDGMENT FOR GARNISHEE

MEHRTENS, District Judge.

This cause came on to be heard on motions for summary judgment by plaintiff-garnishor Boyd and garnishee United States Fidelity & Guaranty Company (U.S.F. & G.). The parties stipulated to the following facts:

1. Plaintiff-Garnishor Boyd was a pedestrian when struck by a Pontiac automobile owned by Defendant Amelia Bowman, which was operated by her husband, Defendant Charles M. Bowman. Boyd sued the Bowmans in the Dade County Circuit Court, and the Bowmans were defended in said suit by Western

Casualty and Surety Company, the insurer of Mrs. Bowman's car. Dr. Bowman was the owner of a Ford automobile, which was not involved in this accident, which Ford was insured by the Garnishee, U.S.F. & G., who denied coverage for the accident and refused to participate in the defense of the personal injury action. Thereafter, the case was settled by agreement between the parties to said lawsuit, and their respective attorneys, by entry of a Final Judgment in the sum of $50,000.00. Payment on said judgment was made by Western Casualty in the sum of $10,000.00, its full coverage; and personal payment was made by the Bowmans in the sum of $1,500.00. Thereafter, Plaintiff Boyd filed her garnishment directed to Dr. Bowman's insurer, U.S.F. & G., seeking payment of the unpaid portion of the judgment from his policy; and said insurer removed said matter to this Federal Court on the grounds of diversity of citizenship.

2. Prior to her marriage to Dr. Bowman, Mrs. Bowman's name was Amelia Melvin; and she was the owner of an automobile upon which an automobile liability insurance policy was written with the Western Casualty and Surety Company, Fort Scott, Kansas. They were married on June 25, 1966, and since that time have been husband and wife, and have resided together in the same household during the pertinent periods hereto.

3. At the time of her marriage to Dr. Bowman, he was the owner of a 1965 Ford, which he had purchased new in July, 1965, and upon which an automobile liability insurance policy was written by the United States Fidelity and Guaranty Company, Baltimore, Maryland.

4. Upon their marriage, Dr. Bowman continued ownership and use of his vehicle, and the insurance coverage continued with U.S.F. & G., with him as the named insured, including a renewal policy commencing July 1, 1967, and Mrs. Bowman continued ownership and use of her vehicle, and the insurance coverage continued with Western Casualty, with her as the named insured.

5. On September 30, 1966, Mrs. Bowman traded in her automobile on the purchase of a new 1967 Pontiac automobile, which Pontiac was titled to Mrs. Bowman in her married name, Mrs. Amelia Bowman, and the insurance continued with Western Casualty, and her use continued as before.

6. The automobile liability insurance on the Pontiac (Mrs. Bowman's) was renewed by Western Casualty thereafter for the period of March 1, 1967 to March 1, 1968, under Policy No. H-3267816, under which policy she was the named insured, and which policy included her "spouse" as an insured. This policy had bodily injury liability coverage with limits of $10,000.00 for each person, and $20,000.00 for each occurrence.

7. Dr. Bowman's insurer, U.S.F. & G., renewed the coverage on his Ford automobile for the period of July 1, 1967 to July 1, 1968, and issued to him its Family Automobile Policy No. CAF 1234885, a true copy of which is in the record; and under which policy Dr. Bowman was the named insured, and which policy also provided coverage when Dr. Bowman operated a "non-owned" automobile. This policy had bodily injury liability coverage with limits of $50,000.00 for each person, and $100,000.00 for each occurrence.

8. In January, 1968, Dr. Bowman and his wife decided to vacation in Florida. Their respective automobiles were operable, and they chose to drive to Florida in Mrs. Bowman's Pontiac. At the time of the collision with the pedestrian Boyd on January 18, 1968, Dr. Bowman was driving his wife's car, and Mrs. Bowman was a passenger.

9. The accident was reported by the Bowmans to Mrs. Bowman's insurance agent, who had handled her insurance with Western Casualty, since her automobile was the one involved in the accident. Dr. Bowman did not report the matter to his insurers, U.S.F. & G., until he was served with a summons and complaint in the lawsuit filed against them by Boyd in the Circuit Court of Dade County, Florida, Case No. 68–

14123, which pleadings he received by registered mail on September 23, 1968. They notified Western Casualty's agent of the suit, and Dr. Bowman immediately reported the matter to Darrel Johnson, U.S.F. & G.'s agent in Albion, Indiana, in person, and requested U.S.F. & G. to participate in the defense of the suit.

10. Mrs. Bowman's insurer, Western Casualty, entered an appearance in said suit on behalf of the Bowmans, and defended them in said lawsuit. U.S.F. & G. did not enter its appearance, or participate in the defense of the lawsuit, but took the position that its policy did not afford coverage to one of its insureds when such insured was operating a vehicle titled in the name of his wife, who resided with him, when such automobile was insured with another company.

11. Thereafter, Dr. Bowman was notified that the suit had been set for trial in the two-week period commencing April 28, 1969, and Western Casualty's attorneys contacted the Bowmans with regard to settlement discussions that had been commenced between them and the Plaintiff's attorneys.

12. As the demand for settlement was in excess of the $10,000.00 coverage afforded the Bowmans under the Western Casualty policy, they retained Attorney William F. McNagney, Fort Wayne, Indiana, to represent their personal interests in this litigation.

13. Mr. McNagney thereupon contacted Mr. Darrel Johnson, who again checked with U.S.F. & G., and Johnson again confirmed their denial of coverage. Mr. McNagney then sent U.S.F. & G. a letter dated May 6, 1969, and obtained said insurer's written agreement of the denial of coverage, and a true copy of Mr. McNagney's letter of May 6, 1969, and U.S.F. & G.'s reply of May 7, 1969, are part of the record herein.

14. Thereafter, negotiations for settlement continued between the attorneys for the Plaintiff, the attorneys for Western Casualty, and the Bowmans' personal attorney, McNagney, which culminated, with the Bowmans' approval, in a settlement in the sum of $50,000.00, and a judgment being entered therefor. Payment toward this judgment was made by Western Casualty by payment of its full coverage of $10,000.00; and a personal payment was made by the Bowmans in the sum of $1,500.00.

15. With regard to the letters heretofore referred to, Adjuster Robert E. Campbell had the authority to sign said letters; that his signing said letters was within the scope and course of his employment; and that his signing said letters was with the consent and approval of U.S.F. & G.

16. U.S.F. & G. received notice in September, 1968, of the Boyd accident from its insured, Dr. Charles M. Bowman; and though requested by Dr. Bowman to participate in the defense of the Boyd case, U.S.F. & G. refused to do so when first requested to do so by Dr. Bowman shortly after being served with the summons and complaint, and again prior to the settlement of said lawsuit.

The legal issue in this controversy is whether Dr. Bowman's U.S.F. & G. policy provided coverage while he was driving a car owned by his wife. Dr. Bowman's policy on his Ford has bodily injury liability coverage with limits of $50,000.00, for each person and $100,000.00 for each occurrence, whereas Mrs. Bowman's policy on her Pontiac has bodily injury liability coverage with limits of $10,000.00 for each person and $20,000.00, for each occurrence.

The pertinent portions of Dr. Bowman's policy are set out below.

PART 1—LIABILITY

\* \* \*

Persons Insured

The following are Insureds under Part 1:

(a) with respect to the owned automobile,

(1) the Named Insured and any resident of the same household,

\* \* \*

(b) with respect to a non-owned automobile,

    (1) the Named Insured,

\* \* \*

## DEFINITIONS

Under Part 1:

"*Named Insured*" means the individual named in Item 1 of the declarations and includes his spouse, if a resident of the same household;

\* \* \*

"*owned automobile*" means

(a) a private passenger, farm or utility automobile described in this policy for which a specific premium charge indicates that coverage is afforded,

\* \* \*

(d) a temporary substitute automobile;

"*temporary substitute automobile*" means any automobile or trailer, not owned by the Named Insured, while temporarily used with the permission of the owner as a substitute for the owned automobile or trailer when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction;

\* \* \*

"*non-owned automobile*" means an automobile or trailer not owned by or furnished for the regular use of either the Named Insured or any relative, other than a temporary substitute automobile;

\* \* \*

If this policy provides coverage, it can only be on the basis that Dr. Bowman was driving a "non-owned automobile". The Pontiac was owned solely by Mrs. Bowman. Dr. Bowman's Ford was operative at the time of the accident, thereby precluding coverage under the "temporary substitute automobile" clause.

The definition of a "non-owned automobile" excludes vehicles owned by the named insured. Plaintiff-garnishor has cited authority dealing with construction of the term "named insured" under temporary substitute automobile clauses. St. Paul-Mercury Indemnity Co. v. Heflin, 137 F.Supp. 520 (W.D.Ark.1956); Caldwell v. Hartford Accident & Indemnity Co., 248 Miss. 767, 160 So.2d 209 (1964); Baxley v. State Farm Mutual Automobile Liability Insurance Co., 241 S.C. 332, 128 S.E.2d 165 (1962); Farley v. American Automobile Insurance Co., 137 W.Va. 455, 72 S.E.2d 520 (1952). These cases hold, in substance, that the term "named insured" should be construed restrictively, the test being whether the person seeking coverage owned the vehicle involved in the accident. However appropriate this approach may be in construing a "temporary substitute automobile" clause, it is not applicable to the instant case dealing with a "non-owned automobile" clause which has an entirely different function.

Concentrating on the "non-owned automobile" provision, it is clear that the intent of the parties was that the insured would not be afforded coverage on those vehicles, not specifically included under the policy and owned and regularly used by members of the family. The "non-owned automobile" provision excludes vehicles owned by the named insured and Mrs. Bowman is a named insured under the policy.

Farber v. Great American Insurance Co., 406 F.2d 1228 (7th Cir. 1969), a case on all fours with the one before this Court, sets out the basis for this intention.

"In effect, the terms of the policy prevent the insured from purchasing an insurance contract to cover the risk of operating one vehicle, and obtaining coverage on another vehicle that is regularly used in the household. This is a valid and understandable insurance provision. 13 Couch on Insurance 2d § 45:1052, p. 68 (1965)."

This Court is fully cognizant of the multitude of cases which hold that an insurance policy is to be construed liberally as against the insured and strictly as

against the company which drafted it; Farber v. Great American Insurance Co., 406 F.2d 1228 (7th Cir. 1969); Connecticut General Life Insurance Co. v. Craton, 405 F.2d 41 (5th Cir. 1968); State Security Life Insurance Co. v. Kintner, 243 Ind. 331, 185 N.E.2d 527 (1962); however, this Court finds no ambiguity in the provisions of this policy and further finds that Dr. Bowman's U.S.F. & G. policy did not provide coverage for him while driving his wife's car. Any interpretation other than that given to the policy by the Court would result in the unintended and inequitable conclusion that the named insured, Dr. Bowman, paying only a premium for $10,000.00 coverage with Western Casualty on his wife's automobile, would nonetheless obtain $60,000.00 coverage, being the $10,-000.00 on his wife's automobile and $50,000.00 under the U.S.F. & G. policy covering his automobile.

Accordingly, it is ordered and adjudged that plaintiff-garnishor's motion for summary judgment be and the same is hereby denied and that garnishee's motion for summary judgment be and the same is hereby granted.