# IN THE UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

—————————

m 00-60409

—————————

CLARENDON AMERICA INSURANCE CO.,

Plaintiff-Appellant,

VERSUS

THE EMBERS, INC., D/B/A CENTERFOLD STRIP CLUB;
UNKNOWN JOHN DOES;
AND
PEGGY LARK,
AS ADMINISTRATRIX OF THE ESTATE OF TONY DAVIS, DECEASED,
ON BEHALF OF THE ESTATE OF TONY DAVIS
AND ON BEHALF OF ALL WRONGFUL DEATH BENEFICIARIES OF TONY DAVIS,

Defendant-Appellee.

—————————————

Appeal from the United States District Court
for the Southern District of Mississippi

—————————————

September 12, 2001

Before JONES, SMITH, and DeMOSS,
  Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]

Clarendon America Insurance Company ("Clarendon") appeals a summary judgment in favor of the Embers d/b/a/ Centerfold Strip Club and Peggy Lark (collectively "Embers") on Clarendon's motion for declaratory relief to determine coverage and defense duties under a commercial general insurance policy. The district court held that Clarendon (1) has a duty to defend Embers in the underlying state court suit, (2) may have a coverage duty to Embers for actual damages, but coverage will turn on a jury question to be determined in the state court action, and (3) has no duty to cover any punitive damages arising from the underlying suit. Clarendon appeals the first two determinations. Finding no error, we affirm.

## I.

The coverage questions arose when Lark, as administratrix of the estate of Tony Davis and representative of his wrongful death beneficiaries, sued Embers in state court for the wrongful death. Davis allegedly was killed on the premises of the club owned by Embers. The state complaint alleges he was killed by an errant bullet to the head in the parking lot of the club, resulting from a skirmish between employees of the club and some recently-ejected patrons not affiliated with Davis.

---

  [*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

## II.

We review a summary judgement *de novo*. *See Shakelford v. Deloitte*, 190 F.3d 398, 403 (5th Cir. 1999). Interpretation of insurance contracts also are reviewed *de novo*. *See Am. States Ins. Co. v. Natchez Steam Laundry*, 131 F.3d 551, 553 (5th Cir. 1998).

## III.

The parties agree that Mississippi law applies. In Mississippi, (1) where the policy is plain and unambiguous, the court must construe the contract as written; (2) the policy must be read as a whole to give effect to all provisions; (3) the court must read an insurance policy more strongly against the drafter; (4) where the terms of the policy are ambiguous, the court must interpret them in favor of the insured; (5) where a policy is subject to two reasonable interpretations, a court must adopt the interpretation affording the greater indemnity to the insured; (6) where there is no practical difficulty in making the language of a policy free form doubt, any doubtful provision must be resolved against the insurer; (7) a court must interpret policies, especially exclusions, favorably to the insured wherever reasonably possible; and (8) a court must refrain from changing a policy where the terms are unambiguous, despite any resulting hardship. *See Centennial Ins. Co. v. Ryder Truck Rental, Inc.*, 149 F.3d 378, 382-83 (5th Cir. 1998) (citations omitted).

The touchstone of interpretation is the intention of the parties. "If there is ambiguity within a policy of insurance, then the intention of the parties to the insurance contract should be determined based upon what a reasonable person placed in the insured's position would have understood the terms to mean." *J & W Foods Corp. v. State Farm Mut. Auto. Ins. Co.*, 723 So. 2d 550, 552 (Miss. 1998).

IV.

The dispute centers on two sections of the exclusions part of the Clarendon policy. The first is the so-called "expected or intended injury exclusion." The policy excludes from coverage "Bodily Injury or property damage expected or intended from the standpoint of the insured. This exclusion does not apply to bodily injury resulting from the use of reasonable force to protect persons or property." Policy § I.A.2.a. (internal quotation marks omitted). The other exclusion is for assault and battery. It excludes from coverage

Bodily injury or property damage arising from the following:

(1) assault;

(2) battery;

(3) harmful or offensive contact between or among two or more persons;

(4) apprehension of harmful or offensive contact between or among two or more persons; or

(5) threats by words or deeds;

regardless of degree of culpability or intent and without regard to:

(a) whether the acts are alleged to be by or at the direction of the insured, his officers, employees, agents, or servants; or by anyone otherwise on, at, or near premises owned or occupied by the insured; or by any other person;

(b) the alleged failure of the insured, or his officers, employees, agents, or servants, in the hiring, supervision, retention or control of any person whether or not an officer, agent or servant of the insured; or(c) the alleged failure of the insured or his officers, employees, agents, or servants to attempt to prevent, bar, or halt any such conduct.

This exclusion also applies to any claim made by any other person, firm, or organization, asserting rights derived from, or contingent upon any person asserting a claim excluded hereunder. (internal quotation marks omitted)

Policy § II.A.2.q.

The district court held that the facts pleaded in the underlying suit conceivably fall under both exclusions. That is, if the actions of the Embers employees were done with "reasonable force to protect persons or property," while at the same time rising to the level of an "assault", "battery", or "harmful or offensive contact," those actions would seem to be both excluded by subsection "q" and not excluded by subsection "a." This, the court held, is an ambiguity, to be resolved in favor of coverage.

Clarendon argues that, far from there being an ambiguity, the policy is clear as written, and an exclusion cannot be used to grant coverage affirmatively. Clarendon reads the policy so that the exclusion for assault and battery ends the question. Under this view, the non-exclusion of the same suit under another exclusion is irrelevant.

The problem with this argument is that it renders the "reasonable force" clause of the "expected or intended injury" exclusion

3

superfluous. Both parties recognize this is inconsistent with plain Mississippi law to interpret an insurance policy as a whole and to "giv[e] operative effect to every provision". *Continental Cas. Co. v. Hester*, 360 So. 2d 695, 697 (Miss. 1978).

Clarendon apparently recognizes as much in its reply brief, stating that the "reasonable force" clause of the "expected or intended injury" exclusion is not superfluous, because a hypothetical may be imagined in which an employee uses reasonable force that does not rise to the level of an assault or battery, to protect another patron. Specifically, Clarendon offers a hypothetical in which an employee tackles a patron to prevent him from being hit from behind by a flying chair thrown by another patron.

There are two problems with this argument. First, it is far from evident that this action by the employee is not excluded from coverage under the "assault and battery" exclusion for being a "harmful or offensive contact." As that same exclusion makes clear, intent is irrelevant. Thus, if the patron were injured by the employee's heroics, it would not matter that the employee had a noble motive. Thus, the "assault and battery" exclusion still appears to be in conflict with the non-exclusion, in the "expected or intended injury" exclusion, of acts of "reasonable force" to protect persons or property.

Even if one does not rely on this analysis, Clarendon's hypothetical fails. When analyzing an insurance contract for ambiguity, the relevant facts are those of the instant case, not any possible hypothetical that may eliminate the ambiguity at a theoretical level. *See* LEE R. RUSS, COUCH ON INSURANCE § 21:11 (3d ed. 1995). The case to be dealt with comes from the facts of the coverage for *this* insured.[1]

There undeniably was an assault against Davis. If the assault were the result of "reasonable force to protect persons or property" by Embers employees, the policy would not exclude resulting damages from coverage under the "expected or intended injury" exclusion. The plain wording of the "assault and battery" exclusion, though, would exclude such damages from coverage. This is an ambiguity in coverage.

V.

Under Mississippi law, the duty of an insurer to defend the insured against a lawsuit depends only on the facts pleaded in the underlying lawsuit. If a suit is filed alleging facts that bring the suit within coverage of the policy, the duty to defend is triggered. *See Moeller v. Am. Guar. & Liab. Ins. Co.*, 707 So. 2d 1062, 1069 (Miss. 1998). Any ambiguities regarding this defense obligation are strictly construed against the insurer. *See Amer. States Ins.*, 131 F.3d at 553 (applying Mississippi law). This duty extends even to defend suits that are groundless, false, or fraudulent. *See State Farm Mut. Auto. Ins. Co. v. Taylor*, 233 So. 2d 805, 808 (Miss. 1970). Consequently, Clarendon owes a duty of defense to Embers in the wrongful death lawsuit.

AFFIRMED.

---

[1] *See, e.g.*, *J&W Foods Corp. v. State Farm Mut. Auto. Ins. Co.*, 723 So. 2d 550 (Miss. 1998) (remanding to determine the intent of stockholders of close corporation as to whether they intended insurance policy in name of corporation to cover relatives of the insured).

4