LUMBERMAN'S MUTUAL CASUALTY COMPANY *vs.* HANOVER
INSURANCE COMPANY.

No. 93-P-1348.

Middlesex. November 7, 1994. - January 24, 1995.

Present: FINE, GILLERMAN, & IRELAND, JJ.*

*Insurance*, Motor vehicle insurance, Construction of policy, Coverage, Disclaimer of liability, Insured, Insurer's obligation to defend.

The insurer of an employer whose employee was injured in the course of his employment was obligated to defend and indemnify the lessor of the vehicle in which the employee was injured and to make contribution to the lessor's insurer for uninsured benefits already paid to the employee, where the employer's insurance policy clearly stated that the lessor was an "other insured" and no exclusion applied. [57-60]

CIVIL ACTION commenced in the Superior Court Department on October 27, 1992.

The case was heard by *Robert H. Bohn*, J., on motions for summary judgment.

*Thomas M. Neville* for the plaintiff.

*Bernard W. Schranze* for the defendant.

IRELAND, J. We are asked to interpret an insurance policy entitled "Trucker's Policy" issued by the defendant, Hanover Insurance Company (Hanover), certain provisions of which, at first glance, seem to yield contradictory or ambiguous results. The matter involves an insurance coverage dispute between the parties and comes to us on appeal from a Superior Court judgment declaring, under G. L. c. 231A, that Hanover is not obligated to provide coverage in the particular situation that was presented to the court because of an exclusion from coverage provision in its policy. We read the policy differently, and, for reasons detailed below, declare that Hanover is obligated to provide coverage.

---

*Justice Fine participated in the deliberation on this case prior to her retirement.

The facts are not disputed. On March 16, 1987, Michael Glennon, an employee of Future Freight Systems, Inc. (Future Freight), was injured in the course of his employment while operating a truck leased to Future Freight by C.H.A. Leaseway, Inc. (C.H.A.). The accident occurred when the truck Glennon was operating was cut off by another vehicle, which left the scene and has remained unidentified.

Future Freight, the truck's lessee, had insured the truck through Hanover. C.H.A., the lessor, had insured the truck through the plaintiff, Lumberman's Mutual Casualty Company (Lumberman's). Glennon claimed and received benefits under the uninsured motorist provisions of Lumberman's policy in the full policy amount of $100,000. Hanover paid the property damage claim on the truck. Glennon also filed suit against C.H.A. in Plymouth County Superior Court alleging negligent maintenance of the truck's brakes on C.H.A.'s part.

Following the accident, Lumberman's filed a complaint for declaratory judgment pursuant to G. L. c. 231A in Middlesex Superior Court, seeking a determination of Hanover's rights and obligations under the policy it had issued to Future Freight. Hanover filed a motion for summary judgment which, in a memorandum of decision and order, was allowed by the court. Lumberman's appeals from the ensuing judgment.

Lumberman's position here, as it was below, is that (1) it is entitled to reimbursement to the extent of Hanover's policy limits for the $100,000 payment made by Lumberman's for uninsured motorist benefits; and (2) Hanover has a duty both to defend C.H.A. in the pending action against it in Plymouth Superior Court, and to indemnify C.H.A. in the event of an adverse judgment against it in that case. Hanover denies that it is obligated under its policy.

Several provisions of the Hanover policy are relevant to this dispute. Part IV, § D, of the policy ("Who is Insured") identifies Future Freight, to whom the policy was issued, as the named insured ("[y]ou are an insured for any covered auto"). In addition to that, Part IV, § D, provides:

"The owner or anyone else from whom you [Future Freight] hire or borrow a covered auto which is not a trailer is an insured while the covered auto: (a) is being used exclusively in your business. . . ."

C.H.A., the truck's owner and lessor, appears to fit squarely within this provision.

The term "Insured" appearing in the language quoted above is further defined in Part I, § F, of the policy as "any person or organization qualifying as an Insured in the WHO IS INSURED section . . .". The definition also contains a standard severability of insurance clause, see *Worcester Mut. Ins. Co.* v. *Marnell*, 398 Mass. 240, 244 (1986), that reads: "Except with respect to our limit of liability, the Insurance afforded *applies separately to each insured* who is seeking coverage or against whom a claim is made or suit is brought" (emphasis supplied). Stated in similar terms, this clause "requires that each insured be treated as having a separate insurance policy." 398 Mass. at 244. Again, C.H.A. appears to fall within this provision as a separate, other insured party.

Under Part IV, entitled "We Will Pay", Hanover's policy appears to provide the very sort of coverage C.H.A. seeks:

"1.   We will pay all sums the insured legally must pay as damages because of bodily injury or property damage to which this insurance applies, caused by an accident and resulting from the ownership, maintenance or use of a covered auto.

"2.   We have the right and duty to defend any suit asking for these damages. However, we have no duty to defend suits for bodily injury or property damage not covered by this policy. . . ."

Finally, the policy at Part IV, § C(5), specifically excludes from coverage:

"*Bodily injury to any employee of the Insured arising out of and in the course of his or her employment by*

*the Insured.* However, this exclusion does not apply to bodily injury to domestic employees not entitled to workers' compensation benefits." (Emphasis supplied.)

The quoted provision is plainly intended to exempt from coverage personal injury claims made against a particular insured party by an employee of that party, who was acting within the scope of employment and who, therefore, would be covered by the Workers' Compensation Act, G. L. c. 152. (That intent is reinforced in the second sentence quoted above, which excepts domestic employees not covered by workers' compensation from the exclusion.) As such, the provision reinforces the Act's exclusivity of remedy provisions for work-related injuries. *Id.* at § 23. See also *Berger* v. *H.P. Hood, Inc.,* 416 Mass. 652, 655-656 (1993).

Hanover seizes upon the exclusion provision quoted above to argue in effect that, because the injured party, Glennon, was an employee of the named insured, his claim against C.H.A., a separate insured party, is not covered by the policy. Lumberman's, on the other hand, relies on the severability of insurance clause, together with the fact that C.H.A., too, is an insured party, to argue that the exclusion does not apply to C.H.A.'s claim, because Glennon was not C.H.A.'s employee. In his memorandum of decision, the judge agreed and ruled that "[t]he exclusion clause predominates over the 'insured' provision and controls this case." In so ruling, the judge refused to give the "other insured" provisions, or the severability of insurance clause, their full effect, as to do so in his opinion "would lead to unintended results." The judge reasoned that the "other insured" clause applies only in instances where injured third parties not employed by either insured party make a claim against the policy.

As a preliminary matter, we note — as did the judge — that "[t]he responsibility of construing the language of an insurance contract is a question of law for the trial judge, and then for the reviewing court." *Cody* v. *Connecticut Gen. Life Ins. Co.,* 387 Mass. 142, 146 (1982). The judge's conclusions of law are, therefore, entitled to no particular deference on appeal. We attempt to interpret the policy so as to

give reasonable effect to all of its words and provisions, and try to avoid rendering any portion of the policy superfluous. *Worcester Mut. Ins. Co.*, 398 Mass. at 245. We also favor an interpretation which "best effectuates the main manifested design of the parties [Future Freight and Hanover]." *Ibid.* (Citation omitted.)

Bearing in mind these general principles of construction, we turn to the particulars of the policy. A number of cases have involved insurance contracts with exclusion clauses, severability of insurance clauses, and "other-insured" or "omnibus insured" clauses, which, when taken together, may be susceptible of differing interpretations. See, e.g., *Ratner v. Canadian Universal Ins. Co.*, 359 Mass. 375 (1971) (*Ratner*); *DesRosiers v. Royal Ins. Co. of America*, 393 Mass. 37 (1984) (*DesRosiers*); *Reliance Ins. Co. v. Aetna Cas. & Sur. Co.*, 393 Mass. 48 (1984) (*Reliance*); and *Worcester Mut. Ins. Co. v. Marnell, supra* (*Worcester*).

We think that the reasoning in *Ratner*, which is supported in the later cited cases, indicates the proper result here. In *Ratner*, the plaintiffs, doing business as Weg Auto Company (Weg), sued their insurer for failure to defend them in a suit brought by an employee of O. Hodgkins Corporation, who was injured by a security dog licensed to Weg. Weg and O. Hodgkins Corporation occupied the same premises and, under Weg's policy, both were insured parties. As here, the policy specifically excluded bodily injury to an employee of an insured party arising during the course of employment. *Id.* at 380. The policy also contained a severability of interests clause. The *Ratner* court held that "under that clause, the exclusion of coverage for injury to an employee 'of the insured' deprives no one of coverage *except with respect to his own employees.*" (Emphasis supplied.) *Ibid.* "Otherwise, the 'severability of interests' clause would be rendered useless." *Id.* at 381.

*DesRosiers, supra*, relied on by Hanover, in fact supports the same result. There, the court reaffirmed that severability clauses, such as the one in Hanover's policy, generally operate to limit the meaning of the term "insured party" in an

exclusion clause to the party actually seeking coverage. 398 Mass. at 40. The *DesRosiers* court declined to give the severability clause that effect only because the policy had been issued under the compulsory automobile insurance law and was aimed at meeting the minimum requirement of that law "and to do no more." *Id.* at 41. The policy was plainly captioned as such and, therefore, the parties' intent to limit coverage was unmistakable. *Id.* at 42. As to the optional coverage portion of the policy in *DesRosiers*, the court also refused to give the severability clause full effect, because of the unique nature of the particular exclusion (exclusion [11]) which limited coverage for combination tractor-trailer rigs if both were not separately insured by the defendant insurance company. The defendant had insured only the trailer portion.[1] Neither of these unusual situations obtains here: There is no evidence from the face of the Hanover policy to suggest that it was issued only to provide compulsory statutory coverage; and the exclusion relied on by Hanover is altogether different in nature from exclusion (11) in *DesRosiers*. The result in *DesRosiers*, therefore, does not dictate the result here. It bears noting, too, that, in deciding *DesRosiers* on unique facts, the court left intact the holding in *Ratner* giving general effect to severability clauses. *DesRosiers*, *supra* at 46-47.

The *Worcester* case, *supra,* which arises under a homeowner's insurance policy, reaches the same result as *Ratner*

---

[1] The court observed at 44 that "[t]he manifest purpose of exclusion (11) is to disavow the undertaking of any risk by Royal in connection with an accident involving the insured trailer while it is being hauled by a tractor that is owned or hired by either [the named insured] or anyone using the trailer with the consent of [the named insured] . . . unless [the defendant] Royal is compensated therefore by the premiums payable on two policies, one covering the trailer and one covering the tractor. The exclusion expresses Royals' unwillingness to provide coverage on two vehicles for the price of coverage on only one . . . . The tractor-trailer exclusion was tailored to fit a particular situation." Compare *Reliance, supra* at 50-51 (distinguishing the tractor-trailer exclusion in *DesRosiers* from one somewhat similar in the defendant Aetna's policy). In *Reliance,* the court ruled that Aetna's policy provided coverage for a driver employed by a corporation which was an insured party under Aetna's policy, and which had leased a tractor unit from the named insured in that policy.

and *Reliance.* There, the holders of the insurance policy (the Marnells) were sued for the negligent supervision of their teenage son who, after becoming intoxicated at a party in the Marnells' home, struck and killed another motorist while driving a car owned and registered in his own name. Under Worcester Mutual's policy, the son was an unnamed insured party. Despite the policy's exclusion of claims arising out of the ownership or use of a motor vehicle, the court reasoned that the policy's severability of insurance clause made coverage available to the Marnells. The court wrote:

> "[T]he term 'insured' as used in the motor vehicle exclusion refers only to the person claiming coverage under the policy. Since it is undisputed that neither [of the named insured parties, the Marnells] owned or operated the motor vehicle that struck the intestate, the provision excluding coverage for bodily injury arising out of the insured's ownership or use of a motor vehicle does not preclude [the Marnells] from obtaining coverage in connection with the [intestate's] tort action." *Id.* at 244-245.

We find this reasoning persuasive and, accordingly, hold that the severability of insurance provision in Hanover's policy (having identical wording as the one in the *Worcester* case) operates as if a separate insurance policy had been issued to C.H.A. See *id.* at 244. Because the injured party, Michael Glennon, was not employed by C.H.A. the policy's exclusion does not apply in this instance, where Glennon has sued C.H.A., and where C.H.A. seeks coverage under the policy. To hold otherwise would have the effect of reading the severability provision out of the policy. See *Ratner, supra* at 381. Furthermore, by our reading, the exclusion clause is given its plainly intended effect of protecting an insured employer from being sued by its own employee for damages from personal injuries suffered during the course of employment, the employee thereby being entitled to workers' compensation.

As a necessary result of our ruling, Hanover has the duty to defend C.H.A. in Glennon's pending suit against C.H.A., and to indemnify C.H.A. within the policy limits for any damages that may be awarded in that suit. In addition, Hanover is liable to the extent of its policy limits for contribution to Lumberman's for its $100,000 payment to Glennon for uninsured motorist benefits. Although barred by the exclusion in Hanover's policy from claiming uninsured motorist benefits through Future Freight, there is nothing in the policy that would have prevented Glennon from seeking those benefits through C.H.A., as the "other insured." Cf. *Berger v. H.P. Hood, Inc.*, 416 Mass. at 657-658, where the plaintiff was not barred by the exclusivity of remedy provision of the Workers' Compensation Act from seeking underinsured motorist benefits from the corporate lessor of a vehicle, where the decedent was killed in an accident in a truck leased by that corporation to the decedent's employer.

Hanover also contends that, because Lumberman's never obtained its consent to settle with Glennon when he executed a release, it is under no obligation to reimburse Lumberman's for the $100,000 payment.[2] This argument was not advanced below, and, therefore, we decline to take it up for the first time on appeal. See *Anthony's Pier Four, Inc. v. HBC Assocs.*, 411 Mass. 451, 471 & n.25 (1981), and cases cited.

Lumberman's policy is not before us, and, therefore, we do not reach the question of what, if any, contribution from

---

[2]As support, Hanover offers two documents from its supplemental appendix: the first, a copy of a letter from Lumberman's to Hanover requesting reimbursement; the second, a copy of Glennon's signed release.

The third document offered by Hanover is one entitled "Massachusetts Mandatory Endorsement." Other than to quote a single provision therein that excuses Hanover from paying settlements made without its consent, Hanover advances no substantive argument that this document governs the question of reimbursement, rather than the "Trucker's Policy" to which we have directed all of our analysis. Both parties (as did the court below) have based their positions exclusively on the provisions of the Trucker's Policy — not on those within the separate "Massachusetts Mandatory Endorsement."

Lumberman's, stemming from Glennon's suit against C.H.A., Hanover may be entitled to.

The judgment is reversed, and a new judgment is to be entered declaring Lumberman's rights in accordance with this opinion.

*So ordered.*