Revised September 14, 1998

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 97-60489

_____

CENTENNIAL INSURANCE COMPANY,

Plaintiff - Counter Defendant - Appellee

v.

RYDER TRUCK RENTAL, INC.,

Defendant - Counter Claimant - Appellant

_____

Appeal from the United States District Court
for the Northern District of Mississippi

_____

July 31, 1998

Before KING, DAVIS, Circuit Judges, and HEARTFIELD, District Judge.[1]

HEARTFIELD, District Judge:

   We consider whether, under Mississippi law, a business auto insurance policy's separation of insureds provision stating that "the coverage afforded applies separately to each insured who is seeking coverage or against whom a claim or 'suit' is brought" limits the applicability of other provisions excluding from coverage potential obligations arising under worker's compensation or similar law and employee injuries to the insured claiming coverage. The Magistrate Judge below held that it does not. We disagree and reverse.

_____

   [1] District Judge of the Eastern District of Texas, sitting by designation.

1

# I

Scholastic Book Fairs, Inc. (Scholastic), leased a truck from appellant, Ryder Truck Rental, Inc. (Ryder). Fulfilling a promise in the truck lease and service agreement to purchase liability insurance and to hold Ryder harmless for injuries to it, as well as to its employees, drivers and agents, it procured business auto and commercial general liability insurance policies from appellee, Centennial Insurance Company (Centennial), and listed Ryder in the certificate of insurance as an additional insured under both policies.

The commercial general liability insurance policy excluded from coverage "[a]ny obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law" and "'[b]odily injury' to . . . [a]n employee of the insured arising out of and in the course of employment by the insured."[2] It also placed outside of coverage "[b]odily injury' or 'property damage' arising out of the ownership, maintenance, use or entrustment to others of any aircraft, 'auto' or watercraft owned or operated by or rented or loaned to any insured."[3] Finally, it contained the following separation of insureds provision:[4]

---

[2] The exclusion concerning employee injury applied "[w]hether the insured may be liable as an employer or in any other capacity" and "[t]o any obligation to share damages with or repay someone else who must pay damages because of the injury." It did not apply "to liability assumed by the insured under an 'insured contract.'"

[3] The policy defined "use" as "includ[ing] operation and 'loading or unloading.'" (The exclusion was deemed to be beyond certain situations, none of which is pertinent here.)

[4] For background on separation of insureds provisions, which are more commonly known as severability of interest clauses, see United States Fire & Casualty Company v. Reeder, 9 F.3d 15, 18 (5th Cir. 1993), Utica Mutual Insurance Company v. Emmco Insurance Company, 243 N.W.2d 134, 140-41 (Minn. 1976), Liberty Mutual Insurance Company v. Iowa National Mutual Insurance Company, 181 N.W.2d 247, 249 (Neb. 1970), and Shelby Mutual Insurance Company v. Schuiltema, 183 So.2d 571, 573 (Fla. Dist. Ct. App. 1966), aff'd and cert. discharged, 193 So.2d 435 (Fla. 1967).

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this Insurance applies:

a. As if each Named Insured were the only Named Insured; and

b. Separately to each Insured against whom claim is made or "suit" is brought.

The business auto insurance policy excluded from coverage "[a]ny obligation for which the 'insured' or the 'insured's' insurer may be held liable under any workers compensation disability benefits or unemployment compensation law or any similar law" and "bodily injury to . . . [a]n employee of the 'insured' arising out of and in the course of employment by the 'insured.'" It also included the following separation of insureds provision:

E. "Insured" means any person or organization qualifying as an insured in the Who Is An Insured provision of the applicable coverage. Except with respect to the Limit of Insurance, the coverage afforded applies separately to each insured who is seeking coverage or against whom a claim or "suit" is brought.

A disagreement between Centennial and Ryder over the extent of the Scholastic policies' coverage arose when Guy Williams, a Scholastic employee, sued Ryder for injuries suffered when he fell down the ramp of the truck Scholastic had leased from Ryder.[5] Ryder responded to Williams' action by seeking defense and indemnity from Centennial. Centennial refused coverage, citing the exclusions in the Scholastic policies relating to workers compensation and employee injury. It then filed the present suit, in which it sought a declaratory judgment absolving it of any duty to defend or to indemnify Ryder. Ryder counterclaimed for legal fees and expenses incurred in litigating both this case and Williams' action. The parties agreed to proceed before a United States Magistrate Judge. See generally 28 U.S.C. § 636(c).

_____

[5] Williams also filed a worker's compensation claim and collected over $80,000. See Centennial Ins. Co. v. Ryder Truck Rental, Inc., 971 F. Supp. 1066, 1067 (N.D. Miss. 1997).

3

Centennial and Ryder each eventually moved for summary judgment based on an undisputed set of facts.[6] The Magistrate Judge granted Centennial summary judgment and denied Ryder summary judgment based on the exclusions in the Scholastic policies pertaining to workers compensation and employee injury. See Centennial, 971 F. Supp. at 1067-70. In doing so, he also rejected Ryder's contention that a cross-liability endorsement brought Williams' suit within the coverage. See id. at 1070.

After the entry of a final judgment in Centennial's favor, see id. at 1071, Ryder filed a timely appeal contesting the Magistrate Judge's disposition. It, however, subsequently decided against challenging his reading of Scholastic's commercial general liability insurance policy as imposing no obligation on Centennial to defend and indemnify or his rebuff of its interpretation of the cross-liability endorsement's scope.[7]

II

We, sua sponte, consider our jurisdiction at the outset. See, e.g. Gaar v. Quirk, 86 F.3d 451, 453 (5th Cir. 1996); General Motors Corp. v. Envtl. Protection Agency, 871 F.2d 495, 497 (5th Cir. 1989). Centennial sues under the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201-02. Each claim under this measure must rest on an independent jurisdictional ground--in other words,

---

[6] Most of the undisputed facts appeared in a stipulation accompanying Centennial's summary judgment motion. The rest were established by Ryder admitting to certain allegations.

[7] Ryder withdrew its appeal on Scholastic's commercial general liability insurance policy after determining that it fell within the provision excluding bodily injury arising out of ownership, maintenance, use or entrustment of certain property "to any insured." See generally Chacon v. American Family Mut. Ins. Co., 788 P.2d 748, 750-52 (Colo. 1990) (en banc). It chose not to brief the question of the cross-liability endorsement's effect. See generally Webb v. Cardiothoracic Surgery Assocs. of N. Tex., P.A., 139 F.3d 532, 536 n.3 (5th Cir. 1998).

a ground other than the Act itself--and present a justiciable question.  See Federal Kemper Ins.

Co. v. Rauscher, 807 F.2d 345, 351 (3d Cir. 1986).

Both jurisdictional conditions prevail here.  Centennial properly alleges an independent ground

for federal jurisdiction, diversity,[8] and its claim is justiciable, despite the absence of a judgment in

Williams' suit against Ryder.[9]  See Standard Accident Ins. Co. v. Meadows, 125 F.2d 422, 423-

24 (5th Cir. 1942); see also GTE Directories Pub. Corp. v. Trimen Am., Inc., 67 F.3d 1563,

1569-70 (11th Cir. 1995); American States Ins. Co. v. Kearns, 15 F.3d 142, 144-45 (9th Cir.

1994); Capitol Index. Corp. v. Miles, 978 F.2d 437, 438 (8th Cir. 1992).  Given these

circumstances, we may exercise jurisdiction and address the merits of Ryder's appeal.

### III

### A

We review a grant of summary judgment de novo.  Urbano v. Continental Airlines, 138 F.3d

204, 205 (5th Cir. 1998).  Summary judgment proves proper when "there is no genuine issue of

material fact and . . .  the moving party is entitled to a judgment as matter of law."  Fed. R. Civ. P.

56(c).  Factual stipulations and admissions in pleadings can provide the basis for resolving a case

at the summary judgment stage.  See Munoz v. International Alliance of Theatrical Stage

Employees & Moving Picture Mach. Operators of U.S. and Canada, 563 F.2d 205, 213 (5th Cir.

1977); 11 James Wm. Moore et al., Moore's Federal Practice § 56.14[2][d][iii] (3d ed. 1998).

---

[8] Since 1996, when Centennial commenced this action, the amount in controversy threshold for diversity jurisdiction has risen from $50,000 to $75,000.  This change has no retroactive effect.  See Gilman v. BHC Secs., Inc., 104 F.3d 1418, 1421 n.3 (2d Cir. 1997).

[9] Neither Centennial nor Ryder has reported a judgment in Williams' suit.

B

We, as a federal court sitting in diversity, look to Mississippi substantive law to resolve this case. See Erie R.R. v. Tompkins, 304 U.S. 64, 78-80, 58 S. Ct. 817, 822-23, 82 L. Ed. 2d 1188, ____ (1938). We start by determining whether or not any final decisions of the Mississippi Supreme Court are dispositive. See Transcontinental Gas Pipe Line Corp. v. Transportation Ins. Co., 953 F.2d 985, 988 (5th Cir. 1992). If no such holdings exist, we predict how that tribunal would rule. See Lawrence v. Virginia Ins. Reciprocal, 979 F.2d 1053, 1055 (5th Cir. 1992). We base our forecast on (1) decisions of the Mississippi Supreme Court in analogous cases, (2) the rationales and analyses underlying Mississippi Supreme Court decisions on related issues, (3) dicta by the Mississippi Supreme Court, (4) lower state court decisions, (5) the general rule on the question, (6) the rulings of courts of other states to which Mississippi courts look when formulating substantive law and (7) other available sources, such as treatises and legal commentaries.[10] See Ladue v. Chevron U.S.A., Inc., 920 F.2d 272, 275-78 (5th Cir. 1991); Browning Seed, Inc. v. Bayles, 812 F.2d 999, 1002-03 (5th Cir. 1987); Jackson, 781 F.2d at 397; Putnam v. Erie City Mfg. Co., 338 F.2d 911, 913-23 (5th Cir. 1964). "[A]bsent evidence to the

---

[10] Although we once identified the lower federal court's ruling as an aid in discerning how the Mississippi Supreme Court would adjudicate, see Jackson v. Johns-Manville Sales Corp., 781 F.2d 394, 397 (5th Cir.) (en banc), cert. denied, 478 U.S. 1022, 106 S. Ct. 3339, 92 L. Ed. 2d 743 (1986), an intervening United States Supreme Court decision, Salve Regina College v. Russell, 499 U.S. 225, 111 S. Ct. 1217, 113 L. Ed. 2d 190 (1991), repudiated our reliance on that source, see American Waste & Pollution Control Co. v. Browning-Ferris, Inc., 949 F.2d 1384, 1386 n.2 (5th Cir. 1991). See generally Culver v. Slater Boat Co., 644 F.2d 460, 464 (5th Cir. Unit A May 1981) ("'[a]n en banc decision of our court may be overruled only by subsequent en banc consideration or by the United States Supreme Court" (internal quotations omitted)), aff'd as modified, 722 F.2d 114 (5th Cir. 1983) (en banc), cert. denied, 467 U.S. 1252, 104 S. Ct. 3537, 82 L. Ed. 2d 842 (1984), and cert. denied, 469 U.S. 819, 105 S. Ct. 90, 83 L. Ed. 2d 37 (1984).

contrary, we presume that the Mississippi courts would adopt the prevailing rule if called upon to do so." Jackson, 781 F.2d at 398 (internal quotations omitted) (punctuation modified). We must never forget that "[w]e are emphatically not permitted to do merely what *we* think best; we must do that which we think the Mississippi Supreme Court would deem best." Jackson, 781 F.2d at 397; see also Mississippi Power Co. v. Roubicek, 462 F.2d 412, 416-17 (5th Cir. 1972) (quoting American Agricultural Chem. Co. v. Tampa Armature Works, 315 F.2d 856, 863 (5th Cir. 1963) (Brown, J., concurring)).

## C

The controversy here implicates Mississippi's rules for construction of insurance policies, which are as follows. First, where an insurance policy is plain and unambiguous, a court must construe that instrument, like other contracts, exactly as written.[11] See George v. Mississippi Farm Bur. Mut. Ins. Co., 168 So.2d 530, 531 (Miss. 1964). Second, it reads the policy as a whole, thereby giving effect to all provisions. See Brown v. Hartford Ins. Co., 606 So.2d 122, 126 (Miss. 1992). Third, it must read an insurance policy more strongly against the party drafting the policy and most favorably to the policyholder. See Canal Ins. Co. v. Howell, 160 So.2d 218, 221 (Miss. 1964). Fourth, where it deems the terms of an insurance policy ambiguous or doubtful, it must interpret them most favorably to the insured and against the insurer. See Mississippi Ben. Ass'n v. Majeure, 29 So.2d 110, 112 (Miss. 1947). Fifth, when an insurance policy is subject to two equally reasonable interpretations, a court must adopt the one giving the

---

[11] We have held that, in Mississippi, an insurance policy's plain meaning controls unless an affirmative expression of an overriding public policy by the legislature or judiciary allows us to reach a different result. See Aero Intel, Inc. v. United States Fire Ins. Co., 713 F.2d 1106, 1109 (5th Cir. 1983).

greater indemnity to the insured. See Caldwell v. Hartford Accident & Indem. Co., 160 So.2d 209, 213 (Miss. 1964). Sixth, where it discerns no practical difficulty in making the language of an insurance policy free from doubt, it must read any doubtful provision against the insurer. See State Farm Mut. Auto. Ins. Co. v. Scitz, 394 So.2d 1371, 1372 (Miss. 1981). Seventh, it must interpret terms of insurance policies, particularly exclusion clauses, favorably to the insured wherever reasonably possible. See id. at 1373. Finally, although ambiguities of an insurance policy are construed against the insurer, a court must refrain from altering or changing a policy where terms are unambiguous, despite resulting hardship on the insured. See id. This delineation of Mississippi's rules for construction of insurance policies complete, we turn to the interpretive issue before us.

IV

A

Ryder and Centennial differ over how the separation of insureds provision in Scholastic's business auto policy (Scholastic policy) impacts that instrument's exclusions relating to workers compensation and bodily injury to employees (workers compensation and employee injury exclusions). Ryder maintains that the provision limits the exclusions' reach to the insured seeking coverage. According to it, the exclusions, when the relevant part of the provision's language is substituted for word "insured," remove the following from coverage:

> Any obligation for which [the insured who is seeking coverage or against whom a claim or "suit" is brought] or [the insured who is seeking coverage or against whom a claim or "suit" is brought]'s insurer may be liable under any workers compensation disability benefits or unemployment compensation law or any similar law.
>
> . . .

8

"Bodily injury" to . . . [a]n employee of [the insured who is seeking coverage or against whom a claim or 'suit' is brought] arising out of and in the course of employment by [the insured who is seeking coverage or against whom a claim or "suit" is brought].

Put another way, Ryder considers the workers compensation and employee injury exclusions triggered only when the insured claiming coverage is being sued by one of its employees. Centennial counters that the separation of insureds provision in no way precludes the workers compensation and employee injury exclusions from controlling when, as in this case, an employee of one insured sues another insured for injuries. We must decide which of these competing constructions is correct under Mississippi law.

B

We begin by determining whether or not a final decision of the Mississippi Supreme Court settles the dispute. One ruling by that body, Benton v. Canal Insurance Company, 130 So.2d 840 (Miss. 1961), may possibly do so.

Benton arose when Emmett Benton, an employee of Stubbs & Stubbs (Stubbs), sued Mississippi Steel Corporation (Mississippi Steel) and one of its employees, Howard M. Polk, for injuries he suffered when a steel plate or rail being loaded by Polk onto a Stubbs truck hit him on the head. See id. at 841. After receiving a favorable judgment,[12] Benton secured an execution against Polk and filed a suggestion of garnishment against Canal Insurance Company (Canal) based on an automobile insurance policy that Canal had issued to Stubbs covering third persons (Stubbs policy). See id. at 841, 842. Canal denied any indebtedness to Polk, relying on provisions in the Stubbs policy excluding from coverage "bodily injury to or sickness, disease, or

_____

[12] Polk was found negligent, while Mississippi Steel was held liable under the doctrine of respondeat superior. Benton, 130 So.2d at 842.

9

death of any employee of the insured arising out of and in the course of (1) domestic employment by the insured, if benefits therefor are in whole or in part either payable or required to be provided under any workmen's compensation law, or (2) other employment by the insured" and "any obligation for which the insured or any carrier as his insurer may be held liable under any workmen's compensation, unemployment compensation or disability benefits law, or under any similar law" (Stubbs policy exclusions). Id. at 843-44. Polk and Western Casualty & Surety Company (Western Casualty), which had purchased and taken assignment of Benton's judgment against Mississippi Steel, asserted that Canal was bound to defend and indemnify Polk because the Stubbs policy's severability of interests clause, which stated that "[t]he term 'the insured' is used severally and not collectively," established "the phrase 'any employee of the insured', as used in the Exclusion Clause . . . , to mean 'any employee of the insured against whom a claim is made or suit is brought.'" Id. at 844. Canal, in contrast, contended that the decision in Continental Casualty Company v. Pierce, 154 So.2d 279, 281 (Miss. 1934), called for the Stubbs policy to be construed as failing to cover Benton's action. Benton, 130 So.2d at 844.

The Mississippi Supreme Court sided with Canal. See id. at 845, 847. Following Continental Casualty, it initially lodged the following criticism of the view that the Stubbs policy exclusions be read as extending only to instances where the insured seeks protection against a suit by one of its workers:

> . . . [T]he policy issued here by Canal to Stubbs was written for the benefit of Stubbs to protect him from liability for injuries to third parties. The policy excluded coverage for injuries to Benton, an employee of Stubbs, the named insured. Western Casualty and Polk were not parties to the contract of insurance and had nothing to do with the writing of the policy. Polk was not a named insured. Polk was an employee of [Mississippi] Steel . . . . He claims under the Canal policy only as an additional insured under the general language of Insuring Agreement III. Under these circumstances it seems strange indeed that Polk should

10

claim, or that there should be claimed for him, more protection under the policy of Stubbs than Stubbs, the named insured, who paid for the policy, could claim for himself.

Id. at 846. The court then held that it could not accept the construction advanced by Polk and Western Casualty because the Stubbs policy exclusions' language unambiguously encompassed suits by employees of the named insured against additional insureds. See id. at 846-47, 848. It was unpersuaded that the severability of interests clause called for a contrary reading. See id. at 844, 847. Agreeing with Transport Insurance Company v. Standard Oil Company of Texas, 337 S.W.2d 284, 288-90 (Tex. 1960), in which the Texas Supreme Court had confronted the same situation, its members declared:

> We also think that the addition of the "severability of interests" clause does not indicate that the drafters of the policy form by the addition of that clause intended that the words "any employee of the insured", as they appear in the exclusion clauses, should mean "any employee of the insured against whom liability is sought to be imposed."

Benton, 130 So.2d at 847. This determination led the court to hold that the Stubbs policy afforded no coverage for Benton's suit against Polk. See id.

We find the final decision in Benton failing to settle this case because the language of the Stubbs policy's severability of interests clause differs from that of Scholastic policy's separation of insureds provision. We, therefore, must resolve the dispute between Ryder and Centennial based on a forecast of what the Mississippi Supreme Court would do if confronted with it.

C

We start with the reasoning underlying Benton's holding. Ryder maintains that, in contrast to the severability of interests clause in the Stubbs policy, the separation of insureds provision in the Scholastic policy expressly states that the policy applies "separately to each insured who is seeking coverage or against whom a claim or 'suit' is brought." The decision in Benton, it asserts

11

"clear[ly] indicat[ed] . . . that if a policy[, such as that of Scholastic,] . . . had excluded claims of any employee of an insured against whom liability is sought to be imposed, there would have been coverage as to one who was not the employee of the insured seeking coverage under the policy." Centennial counters that Benton explicitly rejected the result Ryder advocates. "There may be variation in the language between the provisions considered in Benton . . . and those in this case, but as the [Magistrate Judge] . . . properly noted those variations do not effect [sic] the *substance* of the severability of interest clauses or the *substance* of the exclusions at issue," it argues.

We agree with Ryder. Declining to read the severability of interests clause as limiting the Stubbs policy exclusions to "any employee of the insured against whom a claim is made or suit is brought" or "any employee of the insured against whom liability is sought to be imposed" manifests a refusal to inject either the phrase "against whom a claim is made or suit is brought" or the phrase "against whom liability is sought to be imposed" into the Stubbs' policy. It thereby makes the suggestion that Stubbs and Canal could have restricted the applicability of the Stubbs policy exclusions had they included the phrase "against whom a claim is made or suit is brought" or the phrase "against whom liability is sought to be imposed" in the severability of interests clause.[13] See id. at 844, 847.

_____

[13] We observe that Transport, the reasoning in which the Mississippi Supreme Court adopted as its own in Benton, expressly limited its focus to the insurance policy at issue. "[T]he 'severability of interests' clause *in the present policy* cannot alter the holdings in the cases relied upon by Transport," it remarked. Transport, 337 S.W.2d at 290 (emphasis added). It also declared, *"In the policy involved here* there is no ambiguity in the exclusion clauses and no inconsistency is shown between the exclusionary clauses and the 'severability of interests' clause in the policy." Id. (emphasis added). This narrow orientation further bolsters our belief that Benton's holding reaches only insurance policies with severability of interests clauses like that in the Stubbs policy.

We expect the Mississippi Supreme Court would recognize this situation and deem Ryder's construction of the Scholastic policy availing. The separation of insureds provision in the Scholastic policy includes the verbiage absent from the severability of interests clause in the Stubbs policy. It states, "[T]he coverage afforded applies separately to each insured *who is seeking coverage or against whom a claim or 'suit' is brought."* This language, when read along with the workers compensation and employee injury exclusions, plainly and clearly achieves what Benton indicated was necessary for a severability of interests clause to circumscribe exclusions pertaining to worker's compensation laws and employee injury to instances where the insured seeking coverage is being sued by its employee. See Ryder Truck Rental, Inc. v. St. Paul Fire & Marine Ins. Co., 540 F. Supp. 66, 67-73 (N.D. Ga. 1982) (construing severability of interests clause virtually identical to the Scholastic policy's separation of insureds provision).

Benton's criticism of the construction now advanced by Ryder fails to dissuade us. It is dictum, while the analysis of the Stubbs policy's language provides the basis for the court's holding. See City of Jackson v. Wallace, 196 So. 223, 225 (Miss. 1940) (defining dictum); State v. Tingle, 60 So. 728, 729 (Miss. 1913) (defining dicta); Summary of Mississippi Law § 1057 (1969) (defining "dictum" and "obiter dictum"). We consider the latter a stronger indicator of how the Mississippi Supreme Court would conceive the relationship of the separation of insureds provision to the workers compensation and employee injury exclusions. See Darr v. Burford, 339 U.S. 200, 225-26, 70 S. Ct. 587, 601, 94 L. Ed. 761, ___ (1950) (Frankfurter, J., dissenting) ("The disclosure of the reasoning by which a conclusion is reached cannot remotely be deemed dictum. A decision implies the process of reasoning which requires it."); Eisner v. Macomber, 252 U.S. 189, 205, 40 S. Ct. 189, 192, 64 L. Ed. 521, ___ (1920) ("And what we have quoted

13

from the opinion in that case cannot be regarded as obiter dictum, it having furnished the entire basis for the conclusion reached."); Charles W. Collier, Precedent and Legal Authority, 1988 Wis. L. Rev. 771, 772 ("That which is 'obiter dictum' is stated only 'by the way' to the holding of a case and does not constitute an essential or integral part of the legal reasoning behind a decision."). But cf. St. Paul Fire and Marine Ins. Co. v. Schilling, 520 N.W.2d 884, 888-89 (S.D. 1994) (rejecting interpretation of severability of interests clause that "would provide more coverage to a permitee than to the named insured" because it "would directly contravene our reasoning in Birrenkott[ v. McNanamay, 276 N.W.2d 725 (S.D. 1937)]").

Despite the strong implication Benton's reasoning provides, we must refrain from relying on it exclusively to divine how this case would fare in the Mississippi Supreme Court. Other authorities might provide an abundance of contrary signs that, when combined with Benton's dictum, calls for us to deliver a forecast contrary to that which Benton's analysis suggests. Cf. Grey v. Hayes-Sammons Chem. Co., 310 F.2d 291, 294-97 (5th Cir. 1962) (predicting that Mississippi Supreme Court would reject the rule it had announced thirty-four years earlier based on "pure dicta" in a recent decision approving of the contrary doctrine). We, therefore, proceed to examine other sources before making a prediction.

D

A number of authorities address the question of whether or not a separation of insureds provisions (or a severability of interests clause) in an automobile insurance policy constricts the reach of exclusions in the policy relating to worker's compensation and employee injury. Ryder and Centennial both cite cases, none of which comes from Mississippi, sustaining their respective views on it. Centennial especially considers an action litigated in federal court in Mississippi,

14

Preferred Risk Mutual Insurance Company v. Poole, 411 F. Supp. 429, 433-34 (N.D. Miss. 1976), aff'd, 539 F.2d 574 (5th Cir. 1976), significant. It maintains that this case, along with Benton, "mandate[s] affirmance" of the Magistrate Judge's ruling.[14]

The preponderance of pertinent cases favors Ryder's construction of the Scholastic policy. A majority of courts asked to determine the effect of an automobile insurance policy's severability of interests clause worded like the separation of insureds provision (i.e., a severability of interests clause containing the phrase "against whom a claim or 'suit' is brought" or very similar language) on policy exclusions relating to worker's compensation and employee injury like those in the Scholastic policy have, for various reasons, construed the clause to limit the exclusions to instances where the insured claiming coverage is being sued by its employee.[15] Compare Ryder Truck Rental, 540 F. Supp. at 67-73 (applying Georgia and Kansas law) and Lumberman's Mut. Cas. Co. v. Hanover Ins. Co., 645 N.E.2d 35, 53-60 (Mass. App. Ct. 1995) and Michigan Mut. Cas. Liab. Co. v. Ohio Cas. Ins. Co., 333 N.W.2d 327, 331-32 (Mich. Ct. App. 1983) and Short v. Safeco Ins. Co. of Am., 864 S.W.2d 361, 362 (Mo. Ct. App. 1993) (following Baker v. DePew, 860 S.W.2d 318, 322-23 (Mo. 1993) (en banc)) and United States Fidelity & Guar. Co. v. Globe Indem. Co., 327 N.E.2d 321, 322-23 (Ill. 1975) with Hancock v. Tri-State Ins. Co., 858 S.W.2d 152, 154 (Ark. 1993) (en banc). This circumstance strongly signals that the Mississippi

---

[14] We have located cases besides those to which the parties point, as well as some other sources, that speak to the issue before us.

[15] Although the relevant policy language in some of these cases differs from that in the Scholastic policy, we find all such divergences too slight to be truly distinguishable.

15

Supreme Court would adopt Ryder's understanding of how the separation of insureds provision interacts with the workers compensation and employee injury exclusions.[16]

Preferred Risk, the decision on which Centennial places great emphasis, fails to support the insurer's interpretation of the Scholastic policy. While it noted that Benton had held an employee injury exclusion to preclude coverage when an insured was being sued by another insured's worker, it nowhere disclosed whether the policy at issue contained a severability of interests clause. See Preferred Risk, 411 F. Supp. at 433-34. That silence makes it uninformative. See Ryder Truck Rental, 540 F. Supp. at 72, 73.

---

[16] We note that the weight of judicial authority as to the specific question arising here represents a microcosm of a larger division. According to a recent commentary:

> In most cases where an automobile liability policy has contained a severability of interests clause, the court, in finding that an employee exclusion did not apply where the injured person was not an employee of the particular insured seeking protection under the policy, has based its position in whole or in part upon the fact that the policy contained a severability clause, or has recognized that the presence of such a clause would have that effect.

Charles W. Benton, Annotation, Validity, Construction, and Application of Provision in Automobile Liability Policy Excluding From Coverage Injury to, or Death of, Employee of Insured, 43 ALR 5th 149, 161 (1996); cf. Craddock Int'l Inc. v. W.K.P. Wilson & Son, Inc., 116 F.3d 1095, 1103 (5th Cir. 1997) (interpreting a hull insurance policy) ("But the courts have addressed an analogous dilemma: whether a clause excluding coverage for injuries suffered by an 'employee of the insured' excludes coverage of one insured's liability for the injury to an employee of another insured. Most courts addressing the issue have concluded that the employee exclusion should be construed to exclude coverage only if the claimant is the employee of the insured who is asserting coverage under the policy."). This situation presumably explains one treatise's comment that "[s]everability of interests clauses limit the exclusion [for employee injury] and allow more complete recovery under the policy." 6C Appleman's Insurance Law and Practice § 4413 (1979 & Supp. 1998) (discussing automobile liability insurance) (citing cases). (Two other sources we have reviewed, American Jurisprudence 2d and Couch on Insurance, just describe the conflicting perspectives on how a severability of interests clause interacts with exclusions concerning worker's compensation and employee injury. See 7 Am. Jur. 2d Automobile Insurance § 285 (1980 & Supp. 1997); 8 Lee R Russ, Couch on Insurance § 115.22 (3d ed. 1997).)

16

Authorities beyond <u>Benton</u> further encourage us to conclude that the Mississippi Supreme Court would adopt Ryder's reading of the Scholastic policy. Indeed, what seems like a fairly close call when <u>Benton</u> alone receives consideration becomes a much clearer when they are added to the mix. These sources, along with the most telling aspect of <u>Benton</u>, cause us to predict that the Mississippi Supreme Court would construe the separation of insureds provision in the Scholastic policy as rendering the workers compensation and employee injury exclusions in that instrument applicable only to the insured seeking coverage.

V

We hold, as a consequence of our forecast that the Mississippi Supreme Court would arrive at such an outcome, that Williams' suit against Ryder comes within the Scholastic policy's coverage. Because of this disposition, we REVERSE the grant of summary judgment to Centennial and REMAND with instructions to grant summary judgment to Ryder and to enter an appropriate judgment. Costs shall be borne by Centennial.