**UNITED STATES COURT OF APPEALS**
**FIFTH CIRCUIT**

————————

No. 98-50874

————————

CITY OF AUSTIN,

Plaintiff-Appellant,

versus

SOUTHWESTERN BELL VIDEO SERVICES, INC.,

Defendant-Appellee.

Appeal from the United States District Court
for the Western District of Texas

October 14, 1999

Before EMILIO M. GARZA and PARKER, Circuit Judges, and FITZWATER, District Judge.[*]

EMILIO M. GARZA, Circuit Judge:

The City of Austin ("the City") claims that Southwestern Bell Video Service, Inc. ("SBVS"), a video programmer, must enter into a cable-television franchise agreement with it. The district court disagreed, granting summary judgment to SBVS. We affirm.

SBVS, a wholly-owned first-tier subsidiary of SBC Communications, Inc. ("SBC"), provides video (*i.e.,* television) programming to multi-dwelling units (*i.e.,* apartment complexes) located in

———————————

[*]        District Judge of the Northern District of Texas, sitting by designation.

Austin, Texas. Its delivery of television programming to end-users (*i.e.,* subscribers) involves several steps. SBVS receives satellite and broadcast signals on equipment that it owns and operates.[1] It then routes the signals to a demarcation point located on the property of Southwestern Bell Telephone Company ("SWBT"), another wholly-owned first-tier subsidiary of SBC. After it receives the signals, SWBT sends them over its network of copper-wire and fiber-optic cables ("wire network") to various apartment complexes.[2] When the signals arrive at an apartment complex, they enter an in-house cable network, which delivers them to individual apartment units, where subscribers live.

Although they are owned by the same corporate entity (*i.e.,* SBC), SBVS and SWBT operate independently of one another. They share no officers or employees. SBVS pays SWBT for the video supertrunking service, and leases the space located on SWBT's property that serves as the demarcation point for the transfer of signals to the wire network. SWBT alone decides how it will transmit the signals through its wire network.

The City filed suit against SBVS, alleging that SBVS's failure to enter into a cable-television franchise agreement with it violated the Communications Act of 1934 ("the Act")[3] and Texas' home-rule statute.[4] The district court, after considering stipulations filed by the parties, granted summary

---

[1]    SBVS's equipment consists of multiple satellite dishes, a tower and antennae, and signal-processing equipment, known as "headend."

[2]    The transmission service that SWBT provides to SBVS is called "video supertrunking service."

[3]    Subject to an exception inapplicable to this case, the Act provides that "a cable operator may not provide cable service without a cable franchise." 47 U.S.C. § 541(b)(1).

[4]    The home-rule statute provides that a home-rule city may, among other things:

[P]rohibit the use of any street, alley, highway or grounds of the city by any telegraph, telephone, electric light, street railway, interurban railway, steam railway, gas

-2-

judgment to SBVS, holding that "SBVS is not a cable operator under the Act and is therefore not subject to the [Act's] franchise requirement."[5] The City timely appealed.

We review a grant of summary judgment *de novo*. *See Centennial Ins. Co. v. Ryder Truck Rental, Inc.*, 149 F.3d 378, 381 (5th Cir. 1999). Summary judgment is proper when "there is no genuine issue of material fact and . . . the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). Factual stipulations can provide the basis for resolving a case at the summary judgment stage. *See Centennial*, 149 F.3d at 382.

The City argues that the district court erred in holding that SBVS is not a "cable operator." Under the Act, a "cable operator" is "any person or group of persons (A) who provides cable service over a cable system and directly or through one or more affiliates owns a significant interest in such cable system, or (B) who otherwise controls or is responsible for, through any arrangement, the management and operation of such a cable system."[6] 47 U.S.C. § 522(5). This definition makes clear

---

company, or any other character of public utility without first obtaining the consent of the governing authorities expressed by ordinance and upon paying such compensation as may be prescribed and upon such condition as may be provided by any such ordinance.

TEX. REV. STAT. ANN. art. 1175(2) (West Supp. 1999).

[5] Although it mentioned only the Act in its order, the district court disposed of all of the City's claims. SBVS's motion for summary judgment covered "all issues" raised in the City's pleading, and sought the entry of "a take nothing judgment on the City of Austin's claims." The district court granted the motion without qualification. On appeal, the City makes no argument that SBVS has violated the home-rule statute.

[6] Neither party disputes that the commercial entities connected with this case) ) that is, SBVS, SWBT, and SBC) ) are "persons" under the Act, *see* 47 U.S.C. § 522(12) (defining "person" as "an individual partnership, association, joint stock company, trust, corporation, or governmental entity"), and that SBVS's television programming qualifies as "cable service" under the Act, *see id.* § 522(6) (defining "cable service" as "(A) the one-way transmission to subscribers of (i) video programming, or (ii) other programming service, and (B) subscriber interaction, if any, which is

that, even if the arrangement between SBVS and SWBT is a "cable system,"[7] that fact alone is insufficient to establish SBVS as a "cable operator." SBVS can qualify as a "cable operator" only if it meets one of two tests. First, under the "ownership" test, SBVS qualifies as a cable operator if it is a person or a member of a group of persons who either "directly or through one or more affiliates owns a significant interest" in a "cable system." *Id.* § 522(5)(A). Second, under the "control" test, SBVS is a cable operator if it "controls, or is responsible for, through any arrangement, the management and operation" of the "cable system." *Id.* § 522(5)(B).

The City asserts that SBVS fits into both of these descriptions. We disagree. SBVS "owns" and "controls" only some components of a "cable system") ) satellite dishes, a tower and antennae, and "headend" ) ) which collectively do not amount to a "significant interest" therein.[8] As the district

required for the selection or use of such video programming or other programming service"). Further, there is no dispute that SBVS, SWBT, and SBC are all "affiliates" as defined by the Act. *See id.* § 522(2) ("affiliate . . . means another person who owns or controls, or is owned or controlled by, or is under common ownership with, such person.").

[7] For the sake of discussion, we accept the City's argument that the equipment of SBVS and the wire network of SWBT together comprise a "cable system" under the Act. *See id.* § 522(7) (defining "cable system" as "a facility, consisting of a set of closed transmission paths and associated signal generation, reception, and control equipment that is designed to provide cable service which include video programming and which is provided to multiple subscribers within the community").

[8] The dissent suggests that SBVS meets the "ownership" test. However, while the combination of SBVS and SWBT may *constitute* a "cable system," even through its affiliate SBVS does not "own" anything more than its own pieces of the system -- the satellite dishes, broadcast antennae, and "headend." As the District Court found,

> the Cable Act does not transform an entity into a cable operator merely because it is an affiliate of another entity which owns a cable system. *The entity itself*, through its affiliate or affiliates, must *also* "own[] a significant interest in such a cable system" . . .

*City of Austin,* No. A-98-CA-028, at 15 (emphasis added); *cf. National Cable Television Ass'n, Inc. v. FCC*, 33 F.3d 66, 74 (D.C. Cir. 1994) (rejecting the assertion that "ownership of the component

court observed:

> SWBV [*i.e.,* SBVS] and SWBT do not share any board members, corporate officers, or employees. SWBV's "space" at SWBT's central office site is leased. Moreover, SWBV does not have an exclusive right to use SWBT's supertrunking video service, and, like any other customer of SWBT to whom the service is available, must pay a standard tariff to utilize SWBT's service. In fact, once SWBV's transmissions pass over into SWBT's facilities, SWBV has no control, management, or responsibility over the manner in which SWBT provides its supertrunking video service. Furthermore, SWBV's headend equipment is entirely separate from SWBT's transmission facilities [*i.e.,* wire network].

*City of Austin v. Southwestern Bell Video Services,* No. A-98-CA-028, at 15 (W.D. Tex. July 31, 1998). SBVS is thus not a "cable operator" as defined by the Act.[9]

Accordingly, the district court did not err in holding that SBVS need not enter into a cable-television franchise agreement with the City. We affirm.[10]

---

parts of a system is irrelevant to the question whether it is a cable system"). The dissent's analysis implies that separately incorporated entities have ownership interests in each other's assets merely because they have a common parent. We are unable to find any authority to support this principle.

[9] The dissent correctly states that we dispose of this case on a legal argument SBVS does not assert. Despite SBVS's failure to make this argument, we affirm on the express grounds upon which the District Court relied. *See City of Austin*, No. A-98-CA-028, at 14-16. We note in passing that SBVS may have omitted this argument because of the implications of the argument for SBC, SBVS's parent corporation. At oral argument, the City conceded that it will demand that SBC obtain a franchise for the SBVS-SWBT "cable system" if its claim against SBVS is unsuccessful. Therefore, only by proving that SBVS falls within the "public right-of way" exception of § 522(7)(B) or the "common carrier" exception of § 522(7)(C) could *both* SBVS and SBC be exempted from entering into a cable franchise agreement with the City. As we hold that SBVS is not a "cable operator" as defined by the Act, we do not reach the questions of whether SBVS (or, for that matter, SBC) falls within either of the two exceptions.

[10] We deny as moot SBVS's Motion to Dismiss as Moot the City's Appeal Related to Its Claim for Injunctive Relief.

-5-

FITZWATER, District Judge, dissenting:

The majority opinion does not reach several issues of statutory construction that this appeal presents. The resolution of these questions is important to municipal franchising authorities, telecommunications companies, and the cable television industry.[11] Instead, it decides the case on a narrow basis that even the appellee does not advance, and in so doing misreads 47 U.S.C. § 522(5)(A). I respectfully dissent.

With exceptions not pertinent here, 47 U.S.C. § 541(b)(1) states that "a cable operator may not provide cable service without a franchise." Section 522(5) defines "cable operator" as

> any person or group of persons (A) who provides cable service over a cable system and directly or through one or more affiliates owns a significant interest in such a cable system, or (B) who otherwise controls or is responsible for, through any arrangement, the management and operation of such a cable system[.]

Section 522(2) provides that "'affiliate', when used in relation to any person, means another person who owns or controls, is owned or controlled by, or is under common ownership or control with, such person[.]" The parties stipulated below, and the majority acknowledges, that Southwestern Bell Video Services, Inc. ("SBVS") and Southwestern Bell Telephone Company ("SWBT") are both wholly-owned first-tier subsidiaries of SBC Communications, Inc. ("SBC"). SBVS and SWBT are therefore under common ownership or control, and the two entities are affiliates.

The majority accepts *arguendo* "the City's argument that the equipment of SBVS and the wire network of SWBT together comprise a 'cable system' under the Act." It holds that SBVS is not a cable operator, however, because it "'owns' and 'controls' only some components of a 'cable

---

[11]The appellant requested oral argument on the ground that this appeal presents an issue of apparent first impression. The appellee recognized in its statement regarding oral argument that "[t]his appeal presents important statutory interpretation questions not previously resolved by an appellate court."

system') ) satellite dishes, a tower and antennae, and 'headend' ) ) which collectively do not amount to a 'significant interest' therein." Maj. Op. at 4 (footnote omitted). The majority quotes from the opinion below, in which the district court explained its basis for concluding that, even if SBVS's and SWBT's facilities together constitute a cable system, "there is no evidence that [SBVS] has significant ownership or control over the cable system." The majority and the district court interpret § 522(5)(A) to mean that SBVS itself must have a significant ownership interest in the cable system, measured separately from its affiliate's ownership interest.[12] This conclusion misinterprets § 522(5)(A).

Section 522(5)(A) provides that the ownership of a significant interest in a cable system may be "direct[ ] or through one or more affiliates." As wholly-owned first-tier subsidiaries of SBC, SBVS and SWBT are under common ownership or control and are therefore "affiliates." There is no dispute for purposes of today's decision that the equipment of SBVS and the wire network of SWBT comprise a "cable system." It follows that because SBVS and SWBT together own all the equipment and network that constitute the cable system, SBVS owns a significant interest in it, at least through its affiliate.[13] I respectfully disagree with the majority's contrary interpretation.

---

[12]The district court also cited the Federal Communication Commission's ruling in *In re Entertainment Connections, Inc.*, FCC 98-111 (June 30, 1998). In *Entertainment Connections*, however, the provider of cable services unquestionably was not an affiliate of the local exchange carrier. *See id.* at ¶¶ 55-56.

[13]The majority responds by stating that "[t]he dissent's analysis implies that separately incorporated entities have ownership interests in each other's assets merely because they have a common parent." Maj. Op. at 5 n.8. I respectfully disagree. I conclude that, directly or through SWBT, SBVS owns a significant interest in the cable system because SBVS and SWBT are affiliates who are under the common ownership or control of SBC, not because SBVS owns an interest in SWBT's assets. I am merely interpreting § 522(5)(A) as Congress enacted it, not attempting to rewrite corporate law.

Moreover, one would think that if this case could so easily be resolved based on this simple premise, SBVS would have vigorously raised and pressed this argument. But even SBVS does not ask that we affirm the district court on this reasoning.[14] Appellant City of Austin (the "City") asserts in its opening brief that, standing alone or in combination with SWBT, SBVS owns a significant interest in the cable system. It challenges the district court's contrary reasoning as neither supportable nor fully comprehensible. SBVS does not contest these contentions. It urges affirmance based on two exceptions to the definition of "cable system" found in § 522(7). SBVS argues that it does not use public right-of-way, thus falling within the exception of § 552(7)(B), and that its activities fall within the common carrier exception, § 552(7)(C).[15] As the City points out in its reply brief, SBVS "has not contested on appeal the proposition that it has the requisite interest or control in the cable system to bring it otherwise within the reach of both subsections (A) and (B) of 47 U.S.C. § 522(5)." Appellant Rep. Br. at 3.

I respect the views of my able colleagues, but I would decide this case based on the important issues presented rather than upon a misinterpretation of the definition of "cable operator."

---

[14]SBVS asserts in its statement of the issue that "[t]he sole issue before this Court is whether, for purposes of the Cable Act, SBVS operated a 'cable system' within the City of Austin and thus was a 'cable operator' who could be required by the City to obtain a municipal franchise and to remit franchise fees to the City." Appellee Br. at 2.

[15]In responding to one of the City's arguments concerning the applicability of the common carrier exception, SBVS focuses on the absence of a cable system rather than upon the definition of cable operator. *See* Appellee Br. at 31 ("[O]nly after the existence of a 'cable system' has been established does the 'cable operator' definition's reference to affiliates become relevant to any analysis.").

SBVS also argues that our decision in *City of Dallas v. FCC*, 165 F.3d 341 (5th Cir. 1999), is distinguishable, and counters the policy arguments advanced by the City and *amici curiae* in the event the relevant statute is deemed to be ambiguous.