903 So.2d 609 (2005)
Gwendolyn LANDERS and Callie Landers, Individually and on Behalf of their Mother, Annie Landers, Plaintiffs-Appellees
v.
INTEGRATED HEALTH SERVICES OF SHREVEPORT d/b/a IHS Shreveport Nursing Home, Defendant-Appellant.
No. 39,739-CA.
Court of Appeal of Louisiana, Second Circuit.
May 11, 2005.
*610 Adams & Reese by Robert L. Bonnaffons, Robert Markle, Stefini W. Salles, New Orleans, for Defendants Appellants Integrated Health Services of Shreveport and IHS Shreveport Nursing Home.
Mayer, Smith & Roberts by Deborah S. Baukman, Shreveport, for Intervenor Appellee Indemnity Ins. Co. of North America.
Georgia P. Kosmitis, Shreveport, Julia E. Blewer, for Plaintiffs Appellees Gwendolyn Landers, Callie Landers and Annie Landers.
*611 Pugh, Pugh & Pugh by Robert G. Pugh, Jr., Shreveport, for Defendant Appellee Thomas Reilly, M.D.
Before STEWART, PEATROSS and LOLLEY, JJ.
STEWART, J.
Integrated Health Services (IHS) of Shreveport appeals the trial court's denial of its exception of prematurity by determining that the parties' contractual dispute did not have to be submitted to an arbitration panel before proceeding to trial. For the reasons that follow, we affirm the ruling of the trial court.

FACTS
Annie Landers was admitted to IHS' Shreveport Nursing facility on two separate occasions. She was first admitted in June 2000. Upon admission, she signed a contract for care with the facility. However, she only stayed three months before leaving to live at home with her daughter. She was readmitted to the facility six weeks later and signed another contract. Each contract purportedly had a clause mandating arbitration should any dispute between a resident and the facility arise.
Six months following the second admission, Annie left IHS and was admitted to a Shreveport hospital where she underwent treatment for a myriad of health problems.
Annie's daughters, Gwendolyn and Callie Landers, alleged that IHS was responsible for her health problems and that IHS breached the second contract. The contract at issue contains an arbitration clause in Section VI which states:
Pursuant to the Federal Arbitration Act, any action, dispute, claim, or controversy of an kind (e.g., whether in contract or in tort, statutory or common law, legal or equitable, or otherwise) now existing or hereafter arising between the parties in any way arising out of, pertaining to or in connection with the provision of any health care services, any agreement between the parties, the provision of any other goods or services by the Health Care Center or other transactions, contracts or agreements of any kind whatsoever, any past, present, or future incidents, omissions, acts, errors, practices, or occurrence causing injury to either party whereby the other party or its agents, employees or representatives may be liable, in whole or in part, or any other aspect of the past, present, or future relationships between the parties shall be resolved by binding arbitration administered by the National Health Lawyers Association (the "NHLA").
As a result of the above clause, IHS filed an exception of prematurity seeking dismissal of the suit. The Landers argued that Annie lacked the capacity to contract, and despite her name and signature being on the contract, the contract was never executed. They also argued that the arbitration clause was void because it did not contain the written notification required by La. R.S. 9:4235, which requires that before obtaining a patient's signature on an arbitration agreement, a medical institution must inform him in writing that he has the right to void the agreement within thirty days of executing the contract. Following a hearing on the merits, the trial court overruled IHS's exception giving rise to the instant appeal.

DISCUSSION

Exception of Prematurity
The dilatory exception of prematurity is a procedural device to defer a lawsuit when applicable law has created an alternative method for the claimant to seek administrative relief before resorting to *612 judicial action. Yokem v. Sisters of Charity, 32,402 (La.App. 2d Cir.6/16/99), 742 So.2d 906. Generally, the person aggrieved in such a case must exhaust all administrative remedies before being entitled to judicial review.
The trial court determined that the arbitration clause was void because it did not contain the written notification required by La. R.S. 9:4235 which states:
Prior to obtaining a patient's signature on an arbitration agreement, the medical or dental practitioner or medical institution shall inform the patient in writing that:
(1) the patient has the right to void the agreement within thirty days of execution thereof, and that
(2) if an act or acts of negligence and/or medical malpractice is committed prior to the revocation date the arbitration agreement shall be binding with respect to said act or acts, and that
(3) notification of revocation of the said arbitration agreement must be in writing and mailed by certified mail, return receipt requested.
Under Louisiana law, formation of a valid and enforceable contract requires capacity, consent, a certain object, and a lawful cause. The court must find there was a meeting of the minds of the parties to constitute the requirement of consent. Crowe v. Manufactured Housing, Inc., 38,382 (La.App. 2d Cir.6/21/04), 877 So.2d 156. The existence or nonexistence of a contract is a question of fact. The determination of the existence of a contract is a finding of fact, not to be disturbed unless clearly wrong. O'Glee v. Whitlow, 32,955 (La.App. 2d Cir.4/7/00), 756 So.2d 1288.
The plaintiffs assert that the trial court was correct in its finding that Annie Landers lacked capacity to contract and that the defendant has presented no evidence to refute the plaintiffs' representation as to Annie's lack of mental capacity. The medical records from IHS demonstrated that Annie required 24 hour professional nursing supervision and maximum assistance with her daily needs. She was noted to be forgetful, depressed, and suffering from schizophrenia and paralysis from a cerebrovascular accident.
The record shows that IHS was aware of Annie's lack of capacity in October of 2000 when she was admitted the second time, because they were charged with a duty to conduct a neuro/cognitive assessment.
Not only did Annie lack capacity, but she also did not consent to arbitration. There is no proof that Annie understood or was made aware of the rights she would waive in arbitration. There is no evidence that Annie consented to allow the defendant's own employee, Denise Williams, to sign the contract for her.
Moreover, the IHS arbitration clause does not comply with the law. La. R.S. 9:4235 requires that the patient must sign the arbitration clause in order for it to be enforceable. Here, there had been no such action. In addition, the arbitration clause provided no notice of the option to void the agreement.
Lastly, contrary to the defendant's arguments, Annie Landers cannot tacitly ratify an agreement to arbitrate contracted solely by the defendant. The gist of the defendant's argument is that Annie's remaining at the facility following Denise Williams' signing of the agreement was a tacit acceptance of the arbitration agreement. This argument is without merit. As stated above, Annie clearly lacked capacity to contract. Moreover, a principal's ratification of an unauthorized agent's action is not presumed unless ratification *613 is expressed in writing. Everett v. Foxwood Properties, 584 So.2d 1233 (La.App. 2d Cir.1991). There is no evidence to suggest that Annie granted Denise Williams permission to sign the arbitration clause on her behalf.
Further, we find the appellant's argument that the fact that the contract was signed in Annie's presence unpersuasive. If Annie lacked the capacity to understand the contract in order to sign it for herself, it is axiomatic that she also lacked capacity to understand the significance of the defendant's employee signing the contract in her presence.
Furthermore, we find that there are no inconsistencies in plaintiffs' claim alleging personal injury damages, violation of rights under NHBR and breach of contract damages. Gwendolyn and Callie have sued for breach of contract damages alleging that the defendant failed to provide care and services in exchange for payments made on Annie's behalf. Thus, they are able to pursue the appropriate damage claims. Consequently, the trial court was correct to deny IHS exception of prematurity.

CONCLUSION
For the foregoing reasons, we affirm the trial court's denial of IHS' exception of prematurity. Costs assessed to the appellant.
AFFIRMED.