# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

June 20, 2008

Charles R. Fulbruge III
Clerk

No. 07-30606

ABBEVILLE OFFSHORE QUARTERS INC

Plaintiff-Appellant

v.

TAYLOR ENERGY COMPANY

Defendant-Appellee

Consolidated with

No. 07-30608

ABBEVILLE OFFSHORE QUARTERS INC

Plaintiff

v.

TAYLOR ENERGY COMPANY

Defendant-Third Party Plaintiff-Appellant

v.

XL SPECIALTY INSURANCE COMPANY

Third Party Defendant-Appellee

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 6:05-CV-740

Before JOLLY, BARKSDALE, and BENAVIDES, Circuit Judges.

BENAVIDES, Circuit Judge:[*]

This consolidated appeal arises from the destruction of leased housing units on offshore oil platforms in September 2004. The district court dismissed the claims of Abbeville Offshore Quarters Inc. ("Abbeville") against Taylor Energy Company ("Taylor"), finding that Taylor was not liable for any damage under the Master Service Contract between Taylor and Abbeville. Taylor filed a third-party demand against XL Specialty Insurance Company ("XL"), Abbeville's liability insurance provider, seeking coverage for its defense costs in the Taylor-Abbeville suit. The district court granted XL's motion for summary judgment, finding that XL was not obligated to cover any of Taylor's costs. For the following reasons, we AFFIRM as to both cases.

I.

Abbeville constructs, sells, and leases buildings and equipment to companies in the offshore oil and gas industry. Taylor operates offshore oil and gas facilities off the coast of Louisiana. In November 2003, Taylor needed an office building in connection with a project located on the Outer Continental Shelf off the coast of Louisiana. Abbeville won the bid to construct and sell the building to Taylor. Accordingly, on November 7, Taylor's general counsel sent two copies of a Master Service Contract to Abbeville with instructions to sign

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

and return the copies to Taylor.[1] The Master Service Contract released Taylor from liability for damage to Abbeville's property, "whether such damage is caused by Taylor's negligence or otherwise."

By letter dated November 12, Emmet Putnam, Abbeville's secretary/treasurer, thanked Taylor for sending the Master Service Contract for his "review and execution" and enclosed "two original signed copies" of the Master Service Contract. Putnam also enclosed Abbeville's standard Addendum (the "Addendum") "with the request that it be included into the [Master Service Contract] in the event that you should ever need rental buildings." The Addendum stated that Taylor would be liable for damages to any buildings Abbeville leased to Taylor.

Taylor executed the Master Service Contract and sent one fully executed original to Abbeville on November 17. Taylor did not execute the Addendum and noted this fact in its November 17 letter to Abbeville. On November 18, Casey Geohegan, Taylor's project manager, sent an email to Abbeville stating that Taylor "releases [Abbeville] to commence work in accordance with the provisions of the current Master Services Contract between" Taylor and Abbeville. Abbeville began work for Taylor in November 2003.

In the meantime, Taylor began construction activities on a different offshore oil platform and needed to lease temporary housing for its construction workers. In April 2004, Taylor agreed to lease the housing units from Abbeville. Abbeville did not contact Taylor to discuss the unexecuted Addendum or any other terms regarding the leased buildings. When the leased housing units were delivered to Taylor, Abbeville sent rental contracts with the truck drivers.

---

[1] Taylor and Abbeville agree that master service contracts are commonly used in their industry. Emmet Putnam, Abbeville's secretary/treasurer, testified that master service contracts enable one agreement to govern "all services, work and equipment" provided by Abbeville to a customer so that the parties do not have to execute new contracts for each newly provided service.

Taylor did not sign the rental contracts, and it is unclear if the rental contracts were ever delivered to the proper Taylor officials. Taylor made regular payments to Abbeville for the leased housing units. On September 16, 2004, Hurricane Ivan struck the coast of Louisiana and completely destroyed the leased housing units.

Abbeville filed suit in Louisiana state court, alleging that it sustained damages "due to the fault or negligence of Taylor." Taylor removed the matter to federal district court under the Outer Continental Shelf Lands Act, 43 U.S.C. § 1331 et seq. Taylor then filed a third-party demand against XL, alleging that Abbeville's insurance policy with XL (the "XL policy") covered Taylor's defense costs in the underlying Taylor-Abbeville suit. Taylor and XL filed cross-motions for summary judgment. The district court: (1) found that the Master Service Contract governed the relationship between Taylor and Abbeville and dismissed Abbeville's claims against Taylor and (2) granted XL's motion for summary judgment, finding that XL was not required to cover Taylor's defense costs. Both Abbeville and Taylor timely appealed.

## II.

We review the district court's grant of summary judgment de novo. Melton v. Teachers Ins. & Annuity Ass'n of Am., 114 F.3d 557, 559 (5th Cir. 1997). Summary judgment is appropriate only where there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

## III.

This case is governed by the Outer Continental Shelf Lands Act, 43 U.S.C. § 1331 et seq. Under that act, the law of the state adjacent to the relevant portion of the outer continental shelf is adopted as surrogate federal law to the extent not inconsistent with federal law. See Rodrigue v. Aetna Cas. & Sur. Co.,

395 U.S. 352, 357-58 (1969). It is undisputed that Louisiana law applies in this case.

We must first determine whether, under Louisiana law, the district court properly determined that the Master Service Contract governed the relationship between Abbeville and Taylor. "[F]ormation of a valid and enforceable contract requires capacity, consent, a certain object, and a lawful cause." Landers v. Integrated Health Servs. of Shreveport, 903 So. 2d 609, 612 (La. Ct. App. 2005). To establish consent, the court must find that there was a meeting of the minds of the parties. Id.

Abbeville contends that it never accepted the Master Service Contract. Rather, Abbeville argues that its actions–specifically when Putnam sent the Addendum and letter requesting that Taylor execute it–constituted a rejection and counteroffer of the Master Service Contract. Taylor responds that there was no counteroffer because Abbeville's request to execute the Addendum did not limit or condition Taylor's offer.

Under Louisiana law, "[a]n acceptance not in accordance with the terms of the offer is deemed to be a counteroffer." LA. CIV. CODE ANN. art. 1943. In other words, "an acceptance burdened with some condition that was not included in the original offer constitutes a new offer." Vordenbaumen v. Gray, 189 So. 342, 347 (La. Ct. App. 1939); see generally Restatement (Second) of Contracts § 61 cmt. a (1981) ("[T]he mere inclusion of words requesting a modification of the proposed terms does not prevent a purported acceptance from closing the contract unless, if fairly interpreted, the offeree's assent depends on the offeror's further acquiescence in the modification.").

We agree with Taylor that Abbeville's actions did not constitute a counteroffer because they did not limit or condition Taylor's offer. Putnam's letter "requested" that the Addendum be included with the Master Service Contract for potential future use if Taylor rented buildings from Abbeville. Such

action is not sufficient to constitute a counteroffer, especially given that at the time of execution the parties were contemplating purchase, not rental, of buildings. This conclusion is further buttressed by the fact that Abbeville worked and accepted payments pursuant to the Master Service Contract for approximately five months prior to leasing the housing units, and Abbeville did not attempt to discuss or renegotiate the terms of the Master Service Contract at the time of the lease. It is well established that "[m]anifestation of assent [to a writing] commonly consists of signing and delivery." Scaife v. Associated Air Ctr. Inc., 100 F.3d 406, 411 (5th Cir. 1996) (internal quotation marks and citation omitted). Here, the Master Service Contract was signed and delivered by both parties; the Addendum was not.

We find that Abbeville's acceptance of the Master Service Contract was not conditioned upon Taylor's acceptance of the requested additional term. Therefore, the district court properly determined that the Master Service Contract governed the relationship between Abbeville and Taylor. Because the Master Service Contract released Taylor from liability for damage to Abbeville's property "whether such damage is caused by Taylor's negligence or otherwise," we find that the district court properly dismissed Abbeville's claims against Taylor.

IV.

We now turn to the suit between Taylor and XL wherein Taylor seeks coverage from XL for its defense costs in the underlying Taylor-Abbeville suit. To prevail in this suit, Taylor must: (1) be entitled to "additional insured" coverage under the XL policy beyond Abbeville's indemnity obligations under the Master Service Contract,[2] and (2) not fall under an exclusion to coverage in the

---

[2] It is undisputed that Abbeville does not have a duty to indemnify Taylor in this case. Accordingly, if XL is required to provide additional insured coverage to Taylor only to the extent of Abbeville's indemnity obligations, then XL is not required to cover Taylor's defense costs.

XL policy.  Even assuming arguendo that Taylor is correct that it is entitled to additional insured coverage under the XL policy beyond Abbeville's indemnity obligations, we affirm the district court's grant of summary judgment in favor of XL because we find that Exclusion 23 of the XL policy prevents Taylor from recovering its defense costs from XL.

Interpretation of an insurance contract and its exclusions is a question of law that we review de novo.  See Jarvis Christian Coll. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., 197 F.3d 742, 746 (5th Cir. 1999).  Under Louisiana law, "[t]he parties' intent as reflected by the words in the policy determine the extent of coverage."  La. Ins. Guar. Ass'n v. Interstate Fire & Cas. Co., 630 So. 2d 759, 763 (La. 1994).  "Such intent is to be determined in accordance with the general, ordinary, plain and popular meaning of the words used in the policy, unless the words have acquired a technical meaning."  Id. (citing LA. CIV. CODE ANN. art. 2047).  "[I]nsurance companies have the right to limit coverage in any manner they desire, so long as the limitations do not conflict with statutory provisions or public policy."  Reynolds v. Select Props., Ltd., 634 So. 2d 1180, 1183 (La. 1994).

In the section entitled "Exclusions," the XL policy provides: "Notwithstanding anything to the contrary contained in this policy, it is hereby understood and agreed that this policy is subject to the following exclusions and this policy shall not apply to [the following twenty-three exclusions]."  Exclusion 23 excludes "'Property damage' to: (a) Property you own, rent or occupy[.]"  The policy defines "you" to "refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy."  It is undisputed that Abbeville is the only relevant "Named Insured" under this policy and, thereby, the term "you" in Exclusion 23 refers exclusively to Abbeville.  It is also undisputed that Abbeville owned the property that was destroyed.

Based upon the plain language of Exclusion 23, XL argues that the XL policy precludes any insured from obtaining coverage based on a claim of damage to property owned by Abbeville. In other words, XL argues that because "you" is synonymous with "Abbeville," Exclusion 23 excludes coverage for property damage to property owned by Abbeville.

Taylor responds that Exclusion 23 must be read in conjunction with the "Separation of Insureds" provision in the XL policy, which states that the insurance applies "[s]eparately to each insured against whom claim is made or 'suit' is brought." Taylor argues that, although the term "you" in Exclusion 23 may prevent Abbeville from recovering under the XL policy under similar circumstances, it must be treated separately and independently under the separation of insureds provision. In other words, Taylor argues that Exclusion 23 does not apply to it because of the separation of insureds provision.

Taylor is correct that a separation of insureds provision "operates to provide coverage to one insured even though another insured might be excluded." United Fire & Cas. Co. v. Reeder, 9 F.3d 15, 18 (5th Cir. 1993). Accordingly, the fact that Abbeville would fall under Exclusion 23 under similar circumstances does not dictate a finding that Taylor is also excluded. Rather, when determining "the effect of a 'separation of insureds' provision upon a given exclusion," we look to "the precise terms used in that particular exclusion." Stewart Title Guar. Co. v. Kiefer, 984 F. Supp. 988, 996 (E.D. La. 1997).

Based upon the language of Exclusion 23, we agree with XL that the XL policy excludes a specific class of losses–namely property damage to property owned by Abbeville–irrespective of whether Abbeville, Taylor, or any other additional insured is seeking coverage. "[Y]ou" in Exclusion 23 undisputably means Abbeville, such that the meaning of "you" does not alter depending upon which insured seeks coverage (e.g., Abbeville as named insured or Taylor as an

8

additional insured).[3]  We find that the plain language of Exclusion 23 excludes coverage for damage to property owned by Abbeville, notwithstanding the existence of a separation of insureds clause.  Taylor, therefore, is not entitled to coverage from XL for its defense costs in the underlying Taylor-Abbeville suit.

V.

Therefore, the judgment of the district court is AFFIRMED.

---

[3] In contrast, in the cases Taylor relies upon, the exclusion language at issue can be interpreted differently depending upon which insured was seeking coverage.  For example, in Centennial Insurance Co. v. Ryder Truck Rental, the policy contained a separation of insureds provision similar to the one at issue here, and the relevant exclusion denied coverage for injury to "[a]n employee of the insured arising out of and in the course of employment by the insured." 149 F.3d 378, 380 (5th Cir. 1998) (alterations in original) (internal quotation marks omitted). The policy defined the term "insured" as "any person or organization qualifying as an insured in the Who Is An Insured provision," such that more than one company was considered an insured.  Id.  In Centennial, an additional insured was seeking coverage under the policy for a suit brought by an injured employee of the named insured.  This Court found that, under Mississippi law, the exclusion for injury to "[a]n employee of the insured" only precluded coverage for an employee of the insured seeking coverage.  Id. at 386-87.  The logic of Centennial is inapplicable here, however, because the plain language of Exclusion 23 can only be read in one manner.